WILEY, APPELLANT, *v.* WHARTON ET AL., APPELLEES.

(No. 3300—Decided January 24, 1941.)

Mr. *Carl M. Myers,* for appellant.

Mr. *James A. Dean,* for appellee Dr. L. Earl Wharton.

Messrs. *Benner, McGowan & Lombardi,* for appellee Dr. Sam J. Michaels.

DOYLE, J.   The plaintiff, Mina Wiley, brought this action in the Court of Common Pleas of Summit county, against Dr. L. Earl Wharton and Dr. Sam J. Michaels.   The petition charged malpractice.   At the conclusion of the plaintiff's evidence, the trial court sustained motions interposed by each of the defendant doctors and directed the jury to return a verdict in favor of the doctors and against the plaintiff.   Judgment for the defendants was subsequently entered upon the verdict so returned.   Appeal from this judg-

ment, on questions of law, brings the case into this court for review.

The following are the claimed errors:

"1. That the court erred in not admitting all the evidence of Dr. L. Earl Wharton * * *.

"2. That the court erred in directing a verdict for the defendants on the ground that no negligence had been shown.

"3. That the court erred in not submitting the case to the jury.

"4. That the doctrine of *res ipsa loquitur* is applicable, but was refused by the court."

The petition alleged that the plaintiff engaged Dr. Wharton to perform upon her a surgical operation; that Dr. Wharton engaged Dr. Michaels to administer the anaesthetic; that while Dr. Michaels was "attempting to administer (a) spinal anaesthetic (he) permitted the * * * needle to become caught in her spine, and in attempting to remove it he broke (the) needle so that between two and one-half and three inches of it remained embedded in the spine * * *."

The petition further alleged that "the negligence of the defendants consisted in failing to properly give her the spinal anaesthetic and in failing to make sure that the incisions and puncture wounds were properly sterilized or disinfected; and in permitting said wound to become infected after breaking the needle off in her spine. Plaintiff further says that the * * * doctors were negligent in breaking said needle and in allowing the broken piece to remain in her body for nine days. That they failed to use due skill and care in making the spinal puncture."

The evidence summarized is as follows: Dr. Wharton was engaged by the plaintiff to perform, upon her, a major operation. He (Wharton) engaged Dr. Michaels to administer a spinal anaesthetic preparatory to the operation. Dr. Michaels, in the absence of Dr. Wharton, prepared the patient for the anaesthetic, and while

forcing a hollow needle, with stiletto and plunger attached, into the back of the patient between the third and fourth lumbar vertebrae for the purpose of injecting novocaine, the said needle broke. Thereupon Dr. Wharton entered the operating room, and, after being informed of the accident by Dr. Michaels, secured another needle, administered a spinal anaesthetic, and proceeded to operate upon the patient's abdomen. Nine days later, when the plaintiff had recovered sufficiently from the abdominal operation to leave the hospital, she was informed by Dr. Wharton that it would be necessary for her to remain and submit to another operation for the removal of the broken needle. Dr. Wharton thereupon removed the broken needle, after some difficulty in determining its exact location. As a result of the imbedded needle and the necessary operation for its removal, the plaintiff suffered severe physical consequences.

The record reveals no competent evidence of the failure of Dr. Wharton to properly perform the operation for the removal of the broken needle, nor is there any evidence to show that it was improper practice to allow the broken needle to remain in the patient's body until such time as the patient had sufficiently recovered from the abdominal operation to withstand a second operation. Further, the record contains no evidence upon the subject of what is proper practice and custom, in this or a similar locality, to be followed by a surgeon in charge of an operation, during the administering of an anaesthetic to the patient by another surgeon employed as the anaesthetist.

There is, however, competent evidence in the record, offered without objection, which describes the structure and composition of the spine and adjacent parts, and in connection therewith there is evidence establishing the fact that, if a needle is properly inserted, it can be, with little force, thrust through soft tissues to its proper destination.

X-rays of the patient warrant the conclusion that the broken needle had been caused to contact with the bony part of the spine and had not followed a course through soft tissue.

In the cross-examination under the statute of Dr. Wharton, to which testimony no objection was interposed, appears the following:

"Q. As you put the needle through, do you come to the point where you find, in your needle, if you have hit fluid? A. If you are well trained, you should be able to tell when you are in the canal.

"Q. Do you tell that by the color? A. You tell that by the feel of the needle.

"Q. In other words, you cannot disregard the feel of the needle? You can't do that with the needle at any time, can you? A. No, sir.

"Q. You must go in slowly, feeling your way to make sure you are not hitting what? A. Bone.

"Q. If you get to the point where that does occur, that would indicate what? A. That you must change the direction of the needle—

"Q. —and come back? A. That is right. * * *

"Q. * * * You still don't think this needle was caught in the spine itself; is that right or aren't you able to say? A. Oh, yes; I am able to say that the end of that needle was up against the bone. That is right. * * *

"Q. Was it embedded, any part of it, in the bone? A. The needle being sharp would naturally progress a little ways into that bone—otherwise it would not have stopped.

"Q. All right, it was in the bone, then? A. Yes, sir."

There is no evidence in this record revealing the customary practice and method of physicians and surgeons in this or similar localities of anaesthetizing patients preparatory to a major abdominal operation. However, while conformity to a custom or usage is a

matter proper to be submitted to the jury for its consideration in determining whether or not ordinary care has been exercised, customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be gauged. Methods employed in any trade, business or profession, however long continued, cannot avail to establish as safe in law that which is dangerous in fact. *Ault* v. *Hall,* 119 Ohio St., 422, 164 N. E., 518.

In the instant case no complaint is made of the method employed in anaesthetizing the patient. Complaint is made of negligent conduct in pursuing the method.

The evidence warrants the conclusion that a hollow needle, such as was used, is a rather fragile instrument; that in diameter it is about one-half the caliber of the lead in an ordinary lead pencil, and that its flexibility with stiletto and plunger attached is "somewhat greater than the flexibility of an ordinary sewing needle."

It follows therefrom that if such an instrument is sufficiently forced against a hard substance, it, in common probability, will break.

This court is of the opinion that, while the breaking of the needle in the instant case does not permit the application of the rule of evidence known as *res ipsa loquitur,* nevertheless the breaking of the needle under the circumstances, coupled with its location, outside of the channel of soft tissues and against the bone, as shown by the X-ray film, gives rise to a *prima facie* case of negligence, sufficient to call upon the defendant Michaels for explanation. And while it may be that the anaesthetist followed approved custom in his attempt to administer the anaesthetic, nevertheless custom alone, as hereinbefore set forth, will not exonerate one from a charge of negligence.

We are not called upon to pass upon the weight of

evidence in the instant case, but must confine ourselves solely to the problem which confronted the trial judge when he withdrew the evidence from the jury and determined as a matter of law that the plaintiff had failed to establish a *prima facie* case of negligence against Dr. Michaels. For the various reasons heretofore noted, we are of the opinion that the ruling was erroneous.

Directing attention now to the claim of liability against Dr. Wharton and the evidence offered in support of the charge, this court is of the opinion that the judgment of the trial court in determining, as a matter of law, that the evidence did not establish, as to him, a *prima facie* case of negligence, was correct.

In reaching this conclusion, we are mindful of authorities which hold that, when one physician, acting in concert with another in the performance of an operation, perpetrates an act of malpractice, the other may be held liable for the acts of the tort-feasor if he observes such tortious conduct and lets it continue without objection, or if he fails to observe and act upon that which, in the exercise of ordinary care and diligence under the circumstances, he should have observed and acted upon. Compare "Note" to *Morey* v. *Thybo,* 42 L. R. A. (N. S.), 785.

We also have considered the doctrine of *respondeat superior,* and conclude that a discussion of that doctrine would be entirely *obiter* under the circumstances of this case.

Dr. Wharton and the plaintiff entered originally into a consensual contract. At the time, the parties understood that Dr. Wharton was not to administer the anaesthetic but was to perform the abdominal operation. Dr. Wharton suggested that Dr. Michaels be engaged. No objection was interposed by the plaintiff. The plaintiff accepted the services of Dr. Michaels. And although Dr. Wharton actually engaged Dr. Michaels, nevertheless there was created between the plaintiff

and Dr. Michaels a separate contract by implication. Under these circumstances each doctor was engaged to perform his separate and distinct work, independent of the other.

The record discloses no negligence by Dr. Wharton in his selection of Dr. Michaels, nor does it reveal that the practice and custom in this or a similar community required the presence or assistance of Dr. Wharton in the operating room while the patient was being anaesthetized; nor does it reveal any acts performed in concert with Dr. Michaels for which Dr. Wharton might be held liable for the negligence of Dr. Michaels.

The appellant further charges that the trial judge erred in his refusal to admit certain opinion evidence of one of the defendants, Dr. Wharton.

If such evidence had been admitted over objection, it would have contravened the rule announced by this court in *Forthofer* v. *Arnold,* 60 Ohio App., 436, 21 N. E. (2d), 869, which is as follows:

"2. In an action against a physician for malpractice, the plaintiff may not, over objection, prove his case in chief by the expert opinion evidence of the defendant physician, where such defendant has been called for cross-examination under the provisions of Section 11497, General Code."

With this rule we are satisfied, despite the claim of counsel for appellant, and in this case we adhere thereto. We find no error in this respect.

Judgment reversed as to the defendant Dr. Michaels, and affirmed as to the defendant Dr. Wharton.

*Judgment accordingly.*

WASHBURN, P. J., and STEVENS, J., concur.