104 So.2d 29 (1958)
Bertha DOHR and William F. Dohr, her husband, Appellants,
v.
Marvin SMITH, Bessie S. French, and The General Hospital of Greater Miami, Inc., a Florida corporation, Appellees.
Supreme Court of Florida.
July 2, 1958.
Boyle & Boyle, Miami, for appellants.
Blackwell, Walker & Gray, Miami, for Marvin Smith.
Dixon, DeJarnette, Bradford & Williams, Miami, for Bessie S. French.
Morehead, Forrest, Gotthardt, Greenfield & Greenberg, Miami, for General Hospital of Greater Miami, Inc.
THOMAS, Justice.
This litigation followed an operation undergone by the appellant, Bertha Dohr, to whom we will refer as the "patient", performed by the appellee, Dr. Marvin Smith, whom we will call the "surgeon", at The General Hospital of Greater Miami, Inc., appellee, to which we will refer as the "hospital", while the appellee, Dr. Bessie S. French, whom we will call the "anesthetist", administered the anesthetic.
*30 The patient had been advised by the surgeon that it was necessary to have performed upon her a gastric resection to remedy a duodenal ulcer. He then made arrangements with the hospital to use its facilities, and he secured the services of the anesthetist who, however, was not to look to the surgeon for her compensation, but to the patient.
Apparently the operation itself was skillfully performed by the surgeon with the assistance of an employee of the hospital, who is not a party to this action.
It was during the administration of the anesthetic that the incident occurred which the patient claims caused her great injury.
We will now describe briefly the procedure followed by the anesthetist, herself a physician, as she prepared the patient for the operation and tended her during it. She first put the patient to sleep with sodium pentothal then, in order to supply her lungs with oxygen, inserted a tube or "airway" into the windpipe, using a laryngoscope which enables the anesthetist properly to place the tube. While doing this the anesthetist, according to her own deposition, heard a faint noise like the cracking of glass whereupon she removed the laryngoscope and examined visually, and with her hand, the patient's mouth. The facing of a tooth came loose and fell in her hand, a peg for a tooth was revealed and a vacant space next to the peg was discovered.
The anesthetist did not immediately inform the surgeon about the incident but at the conclusion of the operation she told him that one of the patient's teeth had disappeared while the anesthetic was being administered. Evidently the anesthetis then searched through the gauze in the waste pail for a missing tooth, while the surgeon seems, according to appellant's version, simply to have left the room. In any event his deposition contained the statement that he did not recall whether or not he examined the patient's mouth.
We continue the discussion of the facts as they are presented by appellants in portions of the record on which they rely Eventually we will give the other side of the story.
The next day the patient's husband, upon seeing the facing recovered by the anesthetist, told her that more was missing and the patient informed her the bridgework consisted of two teeth. The anesthetist informed the surgeon of the situation. The reaction of both of them as described in her deposition was most indefinite. She did not remember whether or not he suggested that x-rays be taken in an effort to locate the missing teeth and, in substance, she said that she thought, and she thought the surgeon thought, the patient had swallowed them.
The patient shortly developed an "unproductive" cough and this was noted by the surgeon in the hospital records. But no x-rays were taken in an attempt to locate the missing teeth and, according to parts of the record the appellants have chosen to emphasize, no concern seems to have been felt by the surgeon over their whereabouts. To continue, even after the patient returned to her home and her husband renewed his request that search be made by x-ray, the surgeon dismissed the subject with the remark "I wouldn't worry about it. That cough will go away."
Several weeks had passed after the operation when the anesthetist, who apparently continued to be apprehensive about the disappearance of the teeth, called on the patient and suggested that they might be lodged in the patient's lung. At this late date x-rays were taken, the two teeth, with gold "backing", one lacking a facing, were located in the right bronchus and another surgeon removed them by bronchoscopy procedure.
At the conclusion of the testimony introduced by the appellants the judge directed verdicts in favor of all three appellees.
The appellants try to fasten responsibility on the hospital because of the actions *31 of a person to whom we have referred as the one who assisted the surgeon. It is argued on their behalf that this employee, who knew nothing about the missing teeth until the operation had ended, should have found during an examination prior to the operation that the patient had some false teeth, did not examine the patient closely after she learned of the incident, did not tell the surgeon and the anesthetist until two days after the operation.
The charges of misdeeds by her are unsubstantial and wholly insufficient to form a basis for liability on the part of the hospital. Typical of the weakness of the charge against this assistant is the criticism that when she learned of the incident, two days after the operation, "she failed to display the concern that one would presume in the surgeon who had assisted at the operation." Supposedly to emphasize this indifference this sentence, quoted from the appellants' brief, is followed by the statement that "[s]he did not contact either [the surgeon] or [the anesthetist]." It is quite clear that the patient had been attended by a competent surgeon and anesthetist, who was a licensed physician, and that both of them knew of the occurrence the very day of the operation.
We find no occasion to disturb the ruling that the hospital was entitled to a verdict of not guilty.
The responsibility of the surgeon and anesthetist is deserving of more elaborate consideration. As a preface to the discussion of their parts in the episode we say that no assertion is made that either of them was not thoroughly skilled and trained and, therefore, fully cognizant of the treatment to which the patient was entitled from each.
The operation is conceded to have been a success, and nothing appears in the record even suggesting a criticism of the surgeon's exercise of his skill. In preparation for it, the anesthetist was entrusted to make the patient unconscious and keep her so. While the patient was completely immobilized the tube was inserted. The procedure itself which the anesthetist undertook to follow seems to have been regular and proper. Whether or not she was negligent in the performance of her services is the present concern.
It is not disputed that the patient's teeth were dislodged while the oxygen was being administered.
According to her deposition, the anesthetist called on the patient at the hospital the day before the operation for the purpose of determining the patient's fitness to undergo it. She said she examined the patient's teeth because it was "routine, to look at people's teeth, in giving people an anesthetic, to be sure that they have their teeth. If they have a plate, take it out." She said she got the "impression * * * that the teeth were all right * * * [and] didn't dream that those two front teeth were false."
The "bronchotomist" who finally removed the teeth from the patient's lung testified that instruments such as were used could break teeth, that this was "possible" even when the greatest skill and care were exercised.
We gather from these circumstances that the anesthetist cannot be said to have deviated from approved practice from the time she entered upon her duties when she examined the patient preparatory to the operation until the operation had been completed. But the fact remains that the teeth were broken and lost despite the anesthetist's consciousness of such a contingency as evidenced by the "routine" examination obviously intended to prevent the very thing that occurred. And it should be remarked that she assumed none of the patient's teeth was false, and refrained from asking the patient if this was the case because, as appears from the deposition, the question would be insulting.
We are asked to apply a rule formerly announced by this court with reference to the qualifications of expert witnesses who *32 testify about the manner in which a certain operation should, or should not, be performed. It was held that "when" expert testimony is needed to prove that recognized scientific treatment was negligently or unskillfully performed, the witness must be shown to have expert knowledge of the correct method of administering the particular treatment. Foster v. Thornton, 113 Fla. 600, 152 So. 667, and 125 Fla. 699, 170 So. 459. It is the argument of the anesthetist that the judgment should be affirmed because there was "no expert testimony that [she] did not perform her function with the same degree of care and skill that any other anesthetist would use in this operation."
We do not think the appellants should be defeated simply because no expert testified that what happened in this case amounted to negligence on the part of the anesthetist. To repeat, the very caution she undertook to exercise undermines her position. The jury could have decided from common knowledge and experience, regardless of expert testimony, that the patient needlessly suffered from a condition the anesthetist herself sought to prevent. Montgomery v. Stary, Fla., 84 So.2d 34.
We think it would not be amiss to commend the anesthetist for the concern she expressed for the patient's welfare, and the genuine effort she made to repair any damage that had been done by offering to bear the expense of replacing the lost teeth and by securing the services of the "bronchotomist". Moreover, it may be inferred from the statements in her deposition that she waived any charge for her services. Nevertheless, we are impelled to hold that the appellants are entitled to have a jury decide whether or not the anesthetist is chargable with negligence and if she is, the amount of damages recoverable taking into account the expenses the anesthetist has defrayed.
We come now to the case of the surgeon. The claim of damages against him seems to be based primarily on the neglect, or indifference, he displayed commencing at the time he was informed that the teeth were missing. We find in the factual situation no basis for holding him blameworthy for what occurred while the anesthetic was being given the patient.
We have already referred to his attitude as the appellants describe it, but what has been written must be tempered by testimony emphasized in his brief. The surgeon may have been generally in command from the beginning of the operation to the end or, as appellants term him in the brief, "captain of the ship" but it is clear to us that he and the anesthetist were working in highly expert fields peculiar to each and that despite the common goal, the successful repair of the patient's ulcer, their responsibilities were not inextricably bound together. Hudson v. Weiland, 150 Fla. 523, 8 So.2d 37.
Out of justice to the surgeon we should say that contradictory of the impression gained from appellants' presentation in the brief, that the surgeon was indifferent to the patient's condition when she developed the cough, his deposition contains the statement that upon her first visit to his office after leaving the hospital he advised her to secure x-rays of her chest in search of some reason for the cough, and that he urged her to do so. Two or three days later he made an appointment with an expert to examine her chest and he was told, when he called the physician to determine if the patient had appeared, that she or her husband had cancelled the appointment. From conversations with the anesthetist he knew that she was keeping informed about the patient's condition. The surgeon was faced with the question whether or not the patient would be injuriously affected were he to excite her immediately following the operation with the suggestion that the teeth might be embedded in one of her lungs. Of course, such conflicting stories should be resolved by a jury but in this instance there was no need to submit them because of the dearth *33 of expert testimony about what other surgeons in the community would have done in the circumstances or what course of treatment different from the surgeon's they would have pursued. The facts surrounding the surgeon's conduct were certainly not so simple or obvious that he should be placed in the same category as the anesthetist.
We conclude that the judgments in favor of the hospital and surgeon should be affirmed; that the judgment for the anesthetist must be reversed.
THORNAL and O'CONNELL, JJ., and STURGIS, District Judge, concur.
TERRELL, C.J., dissents.
TERRELL, Chief Justice (dissenting).
I think the judgment should be reversed as to the surgeon and anesthetist.