[Civ. No. 11844. Third Dist. June 24, 1969.]

CAROLINE KENNEDY et al., Plaintiffs and Appellants, v. ARTHUR F. GASKELL, Defendant and Respondent.

Colley & McGhee. Nathaniel S. Colley and Milton L. McGhee for Plaintiffs and Appellants.

Peart, Hassard, Smith & Bonnington, Wilke, Fleury, Sapunor & Hoffelt, Richard G. Logan, Joe S. Gray and Salvatore Bossio for Defendant and Respondent.

PIERCE, P. J.—Plaintiffs appeal from a judgment following a defense verdict in favor of defendant Arthur Gaskell in a wrongful death action based upon alleged medical malprac-

tice. Death of plaintiffs' deceased, Bufus Kennedy, was caused by a cardiac arrest after the administering of a local anesthetic preceding performance by Dr. Gaskell of scheduled disc surgery. The incident occurred at Arden Community Hospital. The anesthetic was given by an anesthesiologist (by definition: a physician specializing in anesthesiolology). Both the hospital and the anesthesiologist were originally party defendants. A voluntary dismissal against the former was entered. There was a settlement of the action against the anesthesiologist. The case went to the jury on the issues of (1) the personal negligence of the surgeon, Dr. Gaskell, and (2) his liability as a question of fact under the doctrine of *respondeat superior* as the principal for whom the allegedly negligent anesthesiologist acted as an agent. The verdict was a general one.

The assignments of error on appeal which we discuss herein are: (1) that the court should have instructed the jury that defendant Gaskell was liable as a matter of law for any negligence of the anesthesiologist, and (2) the giving of instructions which plaintiffs characterize as ''mere happening of the accident,'' ''unavoidable accident'' and ''mere guess or conjecture'' instructions.

We disallow all assignments of error.

### The Facts

A substantial part of plaintiffs' argument on appeal is addressed to the issue of the personal negligence of defendant Gaskell both during the initial stages of the administration of the anesthetic and in the heroic attempts after the cardiac arrest. (During the actual occurrence of the cardiac arrest Dr. Gaskell was ''scrubbing'' and surgery had not commenced.)

That is a false issue here.

The jury, correctly instructed both on directly proved negligence and res ipsa loquitur (conditioned upon facts found), returned a verdict on that issue in Dr. Gaskell's favor. No contention is made that substantial evidence does not support that implied finding. There is therefore no point in our discussing evidence relevant to that issue.

A substantial settlement payment resulted in a dismissal of the action against the anesthesiologist. We would waste time and space therefore discussing evidence of the issue of the negligence of the latter. We may assume such negligence, without deciding it.

The court instructed the jury that it could determine from

the evidence *as a matter of fact* that the anesthesiologist was an agent of Dr. Gaskell. Unless the record shows *as a matter of law* that he was such an agent, plaintiffs' theory of liability fails. We address ourselves to the evidence on that question.

The record on that issue shows: Mr. Kennedy was hospitalized for tests on November 25, 1964. The test results obtained the following day indicated immediate surgery. The described surgery was scheduled for 6:30 p.m. that day. The surgeon requested an anesthesiologist from a partnership of such specialists. Kennedy was not asked to and did not participate in the selection. One of the members of the selected firm responded and arrived at the hospital between 5 and 5:30 p.m. Preliminary examinations and administration of drugs were in accordance with standard practice. It had been decided to use a local anesthetic designated as an "epidural block." This is an acceptable type of anesthesia for the surgery contemplated. After the administering by the anesthesiologist of the anesthetic agent, Xylocaine, Dr. Gaskell went to the scrub room to prepare for surgery. The anesthesiologist checked the patient. A sudden loss of blood pressure was noticed. There was no pulse. The anesthesiologist immediately called for help and Dr. Gaskell immediately responded. For the reasons stated, the steps thereafter need not be described. Although the patient's heart resumed beating, stopped and started again twice thereafter and the patient remained alive —but in an extremely critical condition—for approximately 31 hours, he then expired.

### The Agency

The trial judge refused an instruction that defendant surgeon was liable as a matter of law if the jury found negligence on the part of the anesthesiologist. In arguing that proposition plaintiffs rely on the facts that Dr. Gaskell selected both the type of anesthesia and the anesthesiologist, that the surgeon remained in the operating room during the preliminary stages, helped position the patient on the operating table and was present throughout the administration of anesthesia. They say: "Under the foregoing circumstances Dr. Gaskell was responsible under the doctrine of respondeat superior. . . ." The California case upon which principal reliance is placed to support that contention is *Ybarra* v. *Spangard* (1944) 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258]. California's landmark *Ybarra* case, however, does not really help to solve the problem. It involved a plaintiff-patient who,

while unconscious under a general anesthetic (during the performance of an appendectomy) suffered an arm and shoulder accident resulting in paralysis and muscle atrophy. Some one or more among the group present, either the operating surgeon, an anesthetist employed by the hospital, or a nurse, was responsible. (It was established that the arm-shoulder disability had not existed before and was traumatic in origin.) Plaintiff sued everyone present. Defendants argued that since plaintiff could not establish which of the several defendants had been responsible no case had been proved under the doctrine of res ipsa loquitur.

The court (on pages 489-490) made the pointed observation that in some earlier cases too little attention had been given the "basic underlying purpose" of res ipsa loquitur with the result that the doctrine's fundamental background of common sense and human experience had "occasionally been transformed into a rigid legal formula." The court noted (on pp. 493-494) ". . . . A hospital today conducts a highly integrated system of activities, with many persons contributing their efforts. There may be, e.g., preparation for surgery by nurses and internes who are employees of the hospital; administering of an anesthetic by a doctor who may be an employee of the hospital, an employee of the operating surgeon, or *an independent contractor*; performance of an operation by a surgeon and assistants who may be his employees, employees of the hospital, *or independent contractors*; and post surgical care by the surgeon, a hospital physician, and nurses." (Italics ours.) It held that res ipsa loquitur applied under the facts present. As dictum in reaching that decision the court observed (on p. 492) that assisting physicians and nurses, although employed by the hospital, "normally become the temporary servants or agents of the surgeon in charge while the operation is in progress . . ." It must be emphasized that the court was not speaking of an anesthesiologist who is himself a specialist in his field just as a surgeon is a specialist in his, and that the two fields are separate and distinct in the science of medicine.

The trial court's instruction of the possible liability of Dr. Gaskell *as a question of fact* was no doubt based upon the decisions in *Seneris* v. *Haas* (1955) 45 Cal.2d 811, 829-832 [291 P.2d 915, 53 A.L.R.2d 124], and *Quintal* v. *Laurel Grove Hospital* (1964) 62 Cal.2d 154, 166-168 [41 Cal.Rptr. 577, 397 P.2d 161]. In the first of these cases the court said (on p. 831) that "[u]nless the evidence is susceptible of but a single inference, the question of agency is one of fact for the jury . . ." and held (quoting an earlier case: "'[i]t should be

noted that a nurse or physician may be the servant of a hospital, thus requiring the application of the doctrine of *respondeat superior* even though they are performing professional acts. (Citations.)' '' The ruling in *Quintal* was similar under similar facts.[1]

Numerous cases in other jurisdictions have held that absent some showing that the surgeon employed by the plaintiff had the right to control the actions of the anesthesiologist in his specialty, such surgeon is not responsible for the conduct of the anesthesiologist on any theory of vicarious liability. (*Thompson* v. *Lillehei* (8th Cir. 1959) 273 F.2d 376, 382.) Other cases hold the same to be true *as a matter of law*. (*Dohr* v. *Smith* (Fla. 1958) 104 So.2d 29, 32;[2] *Huber* v. *Protestant Deaconess Hospital Assn.* (1956) 127 Ind.App. 565 [133 N.E.2d 864, 869-870] ; *Woodson* v. *Huey* (Okla. 1953) 261 P.2d 199, 203-204; see also *Wiley* v. *Wharton* (1941) 68 Ohio App. 345 [41 N.E.2d 255, 258].[3]

We need not meet the question whether under the facts of this case there was any evidence sufficient *to permit* the jury to have found that the anesthesiologist was Dr. Gaskell's agent. The jury impliedly found against plaintiff on that issue. Substantial evidence was to the effect that the anesthesiologist was in full control of the administration of the anesthesia after being instructed on the type, nature and purpose of the anesthesia desired. We do not have a case of a surgeon negligently selecting an incompetent anesthesiologist. That would be a matter of a separate personal tort liability. We

[1] In *Gist* v. *French* (1955) 136 Cal.App.2d 247 [288 P.2d 1003], the court approved an instruction permitting the jury to consider a hospital's liability as a principal as a question of fact.

[2] In its opinion the Florida Supreme Court stated: ''. . . The surgeon may have been generally in command from the beginning of the operation to the end or, as appellants term him in the brief 'captain of the ship' but it is clear to us that he and the anesthetist were working in highly expert fields peculiar to each and that despite the common goal, the successful repair of the patient's ulcer, their responsibilities were not inextricably bound together. *Hudson* v. *Weiland,* 150 Fla. 523, 8 So.2d 37.''

[3] The Ohio Court of Appeals included a factual analysis, seemingly applicable to the instant case: ''Dr. Wharton and the plaintiff entered originally into a consensual contract. At the time, the parties understood that Dr. Wharton was not to administer the anaesthetic but was to perform the abdominal operation. Dr. Wharton suggested that Dr. Michaels be engaged. No objection was interposed by the plaintiff. The plaintiff accepted the services of Dr. Michaels. And although Dr. Wharton actually engaged Dr. Michaels, nevertheless there was created between the plaintiff and Dr. Michaels a separate contract by implication. Under these circumstances each doctor was engaged to perform his separate and distinct work, independent of the other.

''The record discloses no negligence by Dr. Wharton in his selection

find no room, however, within the traditional scope of the doctrine of *respondeat superior* to impose liability upon the surgeon merely because of a choice of one among dozens of reputable licensed physicians specializing in anesthesiology. We share the rationalization of the Florida court in the *Dohr* case. (See fn. 2.) It would make no more sense to stretch the *respondeat superior* doctrine to that extent than it would be to hold the plaintiff's family doctor liable for selecting a usually competent and skilled surgeon. The rule sought here of nondelegable responsibility could have mischievous results. It would not only permit but command that a specialist in one field of medicine—surgery—must supervise the precise manner of performance by a practitioner in another specialized field—one in which ever increasing scientific knowledge demands greater and greater expertise.

### The Objected-to Instructions

We turn now to instructions given which plaintiffs contend served to nullify the res ipsa loquitur instructions. The instructions (requested by defendant) which plaintiffs state to be the source of such error are the following:

"The mere fact that the plaintiffs have brought this action, alone, of course, constitutes no ground upon which they are entitled to a verdict against these defendants."

"A physician is not to be charged therefore with negligence merely because the result is not what was desired. The law recognizes that, in spite of all his skill and learning, there are many factors over which he has no control."

"And of course, you are hereby instructed also that a mere guess that there might have been negligence on the part of a defendant is not sufficient to justify a verdict against any defendant. A mere conjecture or a mere guess that there may have been negligence is a conclusion not based upon actual proof, and therefore in a case of this nature cannot be the basis for rendering a verdict against any defendant." (The instructions were based upon BAJI 132.)

 It is now well established that it is error to give a "mere happening of the accident" instruction in a case where the doctrine of res ipsa loquitur applies as a matter of law, i.e., where the inference must be drawn. (*Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 625 [327 P.2d 897]; *Persike* v.

of Dr. Michaels, nor does it reveal that the practice and custom in this or a similar community required the presence or assistance of Dr. Wharton in the operating room while the patient was being anaesthetized; nor does it reveal any acts performed in concert with Dr. Michaels for which Dr. Wharton might be held liable for the negligence of Dr. Michaels."

*Gray* (1963) 215 Cal.App.2d 816, 820-821 [30 Cal.Rptr. 603].) Two facts negate the claimed error in this case, (1) whether the doctrine applied, thus creating an inference of negligence, was for the jury to determine, and (2) the instruction objected to was not a "mere happening of the accident" instruction.

■ The instruction characterized by plaintiffs as one on "unavoidable accident" is virtually the same as one given at *their* request on the res ipsa loquitur doctrine, to wit: "The mere fact that death does not ordinarily result from the administration of anesthesia does not, in and of itself, prove that it was caused by negligence."

Logic compels the conclusion that the instruction complained of is nothing more than a means of advising the jury that a physician is not a guarantor of successful results or an insurer for any and all results which might occur. It is difficult to believe that the members of the jury did not have an awareness of the possible existence of factors beyond the control of medical specialists.

■ The complaint of plaintiffs in regard to the "mere guess or conjecture" instruction must also fail when that instruction is considered in the context of the other instructions given. The jury was preliminarily instructed regarding the types of evidence which had been presented and the lack of distinctions as to their value. (BAJI 22, rev., requested by plaintiffs.)

Furthermore, the conditional res ipsa loquitur instructions which were given at plaintiffs' request (BAJI 214-W and 206 (1967 rev.)) served to nullify any confusion on the part of the jurors as to the type of evidence upon which they could base a verdict for plaintiffs.

Essentially the same contention raised here by plaintiffs regarding the giving of a "mere guess or conjecture" instruction together with res ipsa loquitur instructions was rejected in *Orr* v. *Los Angeles Met. Transit Authority* (1963) 213 Cal.App.2d 699, 704 [29 Cal.Rptr. 355], hearing denied.

Other contentions have insufficient substance to justify discussion.

Judgment is affirmed.

Friedman, J., and Janes, J., concurred.

A petition for a rehearing was denied July 17, 1969, and appellants' petition for a hearing by the Supreme Court was denied August 20, 1969.