## OLIVER v. FREEMAN
Case No. 84-183-AP

Eleventh Judicial Circuit, Appellate Division, Dade County

September 5, 1985

### APPEARANCES OF COUNSEL

**Robert C. Lane, Jr.,** for appellants.

**Matt Weinstein** for appellees.

Before NADLER, SHAPIRO, and SALMON, JJ.

### OPINION OF THE COURT

SHAPIRO, J.

Appellants, David and Joan Oliver, appeal from an Amended Final Judgment wherein the lower Court awarded the sum of Twenty Nine Hundred ($2,900.) Dollars plus costs to Robert and Patricia Freeman, the purchasers of a home from the Olivers. No Court Reporter was

present at the trial and this Court is compelled to render its decision based upon the sparse statements filed by the parties.

The action commenced in November, 1982, with the filing of a complaint for damages. The purchase contract contains a valid addendum regarding roof inspection which provides as follows:

"Seller represents that the roof is watertight. Prior to closing, at Buyer's expense, the Buyer shall have the right to have the property inspected by a licensed roof inspector to determine whether or not the roof is watertight. If the roof is not watertight, the Seller shall pay all costs of the treatment required to remedy any such damage so reported or make such roof watertight, including the costs of repairing or replacing all portions of said improvements which have been damaged. However, in the event the total costs to be incurred are more than three (3%) percent of the purchase price, then at the Seller's option he may cancel the contract within ten (10) days of the receipt of the roof inspection reports by giving written notice to the Buyer of such election, unless Buyer offers to close and take a credit against the purchase price and cash to close in the amount of three (3%) percent of the purchase price and agrees to waive the defect."

Neither Appellants' Proposed Statement of Evidence and Proceedings at Trial nor Appellees' Objections and Addendum to Appellants' Statement of Evidence gives us the date of closing. Appellants moved into the subject house at the end of May, 1982. No notice of a roof leak appeared until October, 1982. At that time appellees contacted the roofer, Bradshaw, and requested the roof be replaced. Two roofers testified at trial. Paul Albert stated he is a licensed roofer, the subject roof had outlived its life expectancy and should be replaced, and he estimated it would cost Four Thousand Four Hundred Fifty ($4,450.) dollars to replace the roof. Roofer Harry Bradshaw testified he made repairs to the subject roof and issued a one year guarantee against leaks. At the time he made the repairs and issued his guarantee, he was aware the house was being sold. He further testified appellees insisted on the entire roof being replaced rather than leaks repaired once the leaks were discovered in October, 1982. There was no testimony whatsoever as to the cost of repair of the roof at the time the leaks were discovered.

Appellants contend they were not contractually responsible to appellees in any manner regarding the roof situation. They further contend they did not guarantee the condition of the roof, and lastly, the award of damages to Appellees was erroneous in that no evidence was adduced at trial in support of the damages awarded. We disagree with

all contentions of appellants save one—that being the issue of the damage award.

The representation of a watertight roof was one which survived the closing. The rule of merger that the acceptance of a deed tendered in performance of a contract to convey land extinguishes the covenants and stipulations contained in the contract does not apply to those provisions of the contract which the parties do not intend to be incorporated in the deed or which are not necessarily performed or satisfied by the execution and delivery of the stipulated conveyance. *Milu, Inc. v. Duke,* 204 So.2d 31 (Fla. 3rd DCA 1967). It would be difficult for a purchaser to determine whether or not a leaking roof was properly repaired unless and until tested by the elements. Apparently, the test came in the instant case in October, 1982, with the first seasonal rains. The roof failed the test. Appellees immediately resorted to the "Bradshaw guarantee" in an effort to have the roof replaced. The problem arose when repairs were not enough for appellees who demanded a new roof. Such was never contemplated by the parties.

In *Campbell v. Rawls,* 381 So.2d 744 (Fla. 1st DCA 1980), the Court reached a similar conclusion. The warranty therein was the type of independent covenant generally excepted from the merger doctrine. The Court accepted the lower Court's finding the air conditioning system involved was not in working order at the time of closing. We likewise accept the lower Court's finding the roof was not "leakfree" at the time of closing. However, as in *Campbell,* we must reverse the trial Court's ruling regarding damages. Therein, the trial Court measured the damages by the cost of installation of two new air conditioning systems rather than the cost of repairing the existing system. The Court held the damages recoverable must be limited to the repairs necessary to place the then existing system in working condition but not in such condition as would be necessary to guarantee its working life for any specific period of time because no such guarantee was in the agreement between the parties.

We hold, as did *Campbell,* the purpose of compensation is to restore the injured party to the condition he would have been in had the contract been performed. Those damages which were the natural and proximate result of the breach are recoverable. No testimony was presented to the Court below regarding the condition of the roof and what was required to place the roof in "leakfree" condition at or about the time of closing. Absent testimony regarding these damages suffered by appellees, we are compelled to reverse the judgment of the lower Court.

We recognize cross-defendant Bradshaw was not a party to this

**167**

appeal. However, since we are reversing the lower Court's judgment in favor of the Freemans, we must also reverse that portion of the judgment wherein the Olivers recovered from Bradshaw. We could not do otherwise since to ignore this portion of the judgment would allow an unjust enrichment to the Olivers.

Accordingly, the Amended Final Judgment and award of damages in favor of the Freemans against the Olivers be and the same is hereby reversed as is the judgment of the Olivers against Bradshaw, with directions to dismiss all claims.

SHAPIRO and NADLER, JJ., concur.

SALMON, J. concurs specially.

While I agree with the general principle enunciated by *Milu, Inc. v. Duke*, 104 So.2d 31 (Fla. 3rd DCA 1967), I do not believe that that principle applies to this case. The quoted language from the purchase contract seems to me to indicate that each party wanted to know precisely what their obligations were prior to delivery of the deed. The seller's option is to cancel the contract (before closing), unless the buyer took a credit and waived the defect (before closing).

I would reverse with directions to vacate all judgments and dismiss the action as does the majority, but I would not reach the question of damages.