508 So.2d 35 (1987)
Jerome FORTSON, Individually and As Personal Representative of the Estate of Edith Juanita Fortson, Appellant,
v.
Michael McNAMARA, M.D., Appellee.
No. 86-1527.
District Court of Appeal of Florida, Second District.
June 3, 1987.
Nathaniel W. Tindall, II of Tindall & Mehring, Tampa, for appellant.
A.H. Lane and Charles T. Canady of Lane, Trohn, Clarke, Bertrand & Williams, P.A., Lakeland, for appellee.
HALL, Judge.
Appellant, Jerome Fortson, appeals a summary judgment entered in favor of appellee, Dr. Michael McNamara, in this action for medical malpractice in the wrongful death of Mrs. Fortson. We affirm.
Motions for summary judgment were filed by both parties. The trial court entered an order denying both motions, "at this time," but reserving "ruling on the issue of a physician's legal liability for the acts of a nurse anesthetist." The court thereafter entered an order granting Dr. McNamara's motion for summary judgment. In this appeal Mr. Fortson contends that the trial court erred in finding that "the nurse anesthetist was not a `borrowed servant,' nor could she be characterized as a mere nurse from which would flow specific supervisory responsibilities of the M.D. physician." Mr. Fortson further contends that the trial court erred in entering a summary judgment as to Dr. McNamara's individual negligence as this was a *36 question of fact for the trier of fact. We do not agree with either of Mr. Fortson's contentions.
On March 15, 1983, Mrs. Fortson was taken to Lakeland Regional Medical Center. Her pregnancy had progressed uneventfully to a full term. Late the next morning, Dr. McNamara determined that a cesarean section delivery was necessary because Mrs. Fortson had not progressed in labor and the fetus was in stress. Mr. and Mrs. Fortson initially expressed apprehensions about a cesarean section delivery and general anesthesia, although Mrs. Fortson had no history of problems with general anesthesia. However, after discussing the procedure with Dr. McNamara, the Fortsons gave their approval for the procedure. Mrs. Fortson was immediately prepared and taken to surgery.
The chief nurse anesthetist assigned Ms. Wingate, a nurse anesthetist employed by the hospital, to administer general anesthesia to Mrs. Fortson according to the rules and regulations of the hospital. Regulations of the hospital provided that: (1) the administration of anesthesia by the certified registered nurse anesthetist (CRNA) or the M.D. anesthesiologist is scheduled according to the surgeon's request, (2) the M.D. anesthesiologists are in private practice on a fee-for-service basis and have no official capacity with the hospital administration or CRNA service, (3) the nurse anesthetist reports to the chief nurse anesthetist who works for the hospital and makes out the assignments and call schedules for the nurse anesthetist, (4) the obstetrician has a choice of the type of anesthesia to be used on his patient. After administering the anesthesia, Ms. Wingate inserted the endotracheal tube. At this point she instructed Dr. McNamara that he could proceed with the cesarean section, and he then made his incision. Ms. Wingate immediately realized that the endotracheal tube had been improperly placed in the esophagus, rather than in the trachea, and she advised Dr. McNamara that she needed help. Dr. McNamara advised Ms. Wingate that he had to deliver the baby. Nurse Dye, who was assisting Dr. McNamara, immediately went to the head of the table to assist Ms. Wingate and called for help. Another nurse anesthetist and Dr. Buckner, an anesthesiologist, responded to the call. While Ms. Wingate, the other nurse anesthetist, and Dr. Buckner were working on Mrs. Fortson, Dr. McNamara finished delivering the baby and closed Mrs. Fortson's abdomen. In the meantime, Mrs. Fortson vomited because of the improper intubation and aspirated undigested food into her lungs, which cut off the proper supply of oxygen and caused her to go into cardiac arrest. Although Mrs. Fortson was eventually properly intubated, she was pronounced brain dead a few days later and taken off life support systems.
Mr. Fortson contends that Dr. McNamara, as the surgeon in charge of the operating room, should be held vicariously liable for the negligence of the nurse anesthetist, who has completed a two-year course of special training in the field of anesthesiology and is Board Certified to administer anesthesia. He contends that she is a borrowed servant under the direct supervision of the surgeon and cites Hudmon v. Martin, 315 So.2d 516 (Fla. 1st DCA 1975), and Buzan v. Mercy Hospital, Inc., 203 So.2d 11 (Fla. 3d DCA 1967).
We note, however, that these cases deal with a nurse employed by a hospital who is assisting the surgeon in the actual operative procedure and is under his direct supervision. In Hudmon the court noted that the nurse assisting in the type of operation planned required at least some minimal education and training. The Buzan case involved a nurse who assisted the surgeon in making the sponge count. Neither case involved a nurse with the specialized training of a nurse anesthetist who was not under the immediate personal supervision of the surgeon, as in the instant case. Ms. Wingate was not under the direct supervision of Dr. McNamara and, in fact, performed her duties independently. She is certified by the state of Florida as a nurse anesthetist and "may, to the extent authorized by established protocol approved by the medical staff of the facility in which the anesthetist service is performed, *37 perform any or all of the following: ... (4) Perform under the protocol procedures commonly used to render a patient insensible to pain during the performance of surgical, obstetrical ... procedures." § 464.012, Fla. Stat. (1979).
Dr. McNamara cites Dohr v. Smith, 104 So.2d 29 (Fla. 1958). In Dohr, as in this case, no assertion was made that either the surgeon or the anesthetist was not thoroughly skilled and trained in their fields and fully cognizant of the treatment to which the patient was entitled from each. The supreme court in Dohr stated: "The surgeon may have been generally in command from the beginning of the operation to the end or, as appellant terms him in the brief, `Captain of the ship,' but it is clear to us that he and the anesthetist were working in highly expert fields peculiar to each and despite the common goal, ... their responsibilities were not inextricably bound together." Id. at 32.
We agree with Dohr and find it and Hughes v. St. Paul Fire & Marine Insurance Co., 401 So.2d 448 (La. Ct. App. 1981), controlling of the instant case. The Hughes court was faced with a situation similar to that of the instant case. It found that because the surgeon did not actually supervise or control the acts of the nurse anesthetist, the captain of the ship doctrine was inapplicable. It also found that because the nurse anesthetist was neither employed by the surgeon nor a borrowed employee the surgeon was not vicariously liable for the nurse's actions. While we agree that a surgical nurse, under the direct supervision of the surgeon, who acts according to the surgeon's specific directions, is certainly the servant of the surgeon, we are not willing to place a nurse anesthetist in this category, particularly where there is no showing that the surgeon directed the procedures to be utilized by the nurse anesthetist or had a genuine opportunity to alter the course of events.
In arriving at our decision in the instant case, we recognize that the role of surgeons in the operating room and the control of hospitals are changing under modern medicine. As was stated in the case of Truhitte v. French Hospital, 128 Cal. App.3d 332, 180 Cal. Rptr. 152, 160 (1982),
a theory that the surgeon directly controls all activities of whatever nature in the operating room certainly is not realistic in present day medical care. Today's hospitals hire, fire, train, and provide day to day supervision of their nurse employees. Fortunately, hospitals can and do implement standards and regulations governing good surgery practices and techniques and are in the best position to enforce compliance.
We therefore hold that the trial court was eminently correct in ruling that the nurse anesthetist was not a borrowed servant and could not be characterized as a mere nurse from which would flow specific responsibilities of the surgeon.
Mr. Fortson also contends that the trial court erred in granting summary judgment as to Dr. McNamara's individual negligence. He asserts that a question of fact was created by the allegations in his complaint designating specific acts of individual negligence of Dr. McNamara together with a conclusory affidavit of his expert that "in his opinion the death of Mrs. Fortson was from medical care which was less than the normal standard."
After careful examination of the pleadings, depositions, and interrogatories in the record, we find that no genuine issue of material fact was created as to the individual negligence of Dr. McNamara. We therefore find that the trial court was correct in granting a summary judgment on this issue.
Accordingly, we affirm the trial court's grant of summary judgment in favor of Dr. McNamara.
LEHAN, A.C.J., and THREADGILL, J., concur.