520 So.2d 306 (1988)
Abelardo VARGAS, M.D., and University of Miami, a Florida Corporation D/B/a the University of Miami School of Medicine, and Dade County Public Health Trust, D/B/a Jackson Memorial Hospital, Appellants,
v.
Consuelo DULZAIDES, As Personal Representative of the Estate of Luis Dulzaides, Appellee.
Nos. 86-1490, 86-1618.
District Court of Appeal of Florida, Third District.
February 9, 1988.
Rehearing Denied March 17, 1988.
Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., and Steven E. Stark and Henry Burnett, for appellants Vargas and University of Miami.
Walton Lantaff Schroeder & Carson and G. Bart Billbrough and Douglas H. Stein, for appellant Dade County Public Health Trust.
Stanley M. Rosenblatt, P.A., and Laura S. Rotstein, for appellee.
Before BARKDULL, NESBITT and JORGENSON, JJ.
PER CURIAM.
These are consolidated appeals by Dr. Abelardo Vargas, the University of Miami School of Medicine [the University], and the Dade County Public Health Trust [the Trust] from a final judgment for $600,000 entered upon a jury verdict in favor of Consuelo Dulzaides in a medical malpractice/wrongful death action. Although we affirm the final judgment, two issues raised by the appellants merit discussion.
The first issue presents the question of whether a cardiac surgeon may be vicariously liable for the negligence of a perfusionist.[1] Dulzaides's husband, Luis, died of an air embolism sustained during cardiac bypass surgery when the perfusionist, a Trust employee, was inattentive. The perfusionist, occupied with filling out laboratory *307 slips, failed to observe that air was entering Luis's body. The surgeon, Dr. Vargas, was unable to reverse the damage. Luis Dulzaides remained comatose until his death six months later. Dulzaides's complaint against Dr. Vargas and the University alleged that Dr. Vargas was independently negligent as well as vicariously responsible for the negligence of the perfusionist.[2] At trial, Dulzaides presented the expert testimony of Dr. Charles Hufnagel who asserted that the organization of the perfusion procedure was the surgeon's responsibility. Dr. Hufnagel opined that Dr. Vargas was negligent in permitting the surgery to proceed without some support or backup system to ensure that air did not enter the lines. Charles Reed, another expert witness for Dulzaides and an authority on perfusion, testified that Luis Dulzaides's death was preventable and that open heart surgery should not be done with a single perfusionist in attendance.
At the close of all the evidence, Dr. Vargas and the University moved for a directed verdict on the question of Dr. Vargas's vicarious responsibility for the perfusionist's conduct. The motion was based upon the failure of the testimony to establish that Dr. Vargas had any ability or opportunity to control the perfusionist's specific act of negligence  his failure to monitor the blood level in the oxygenator to ensure that no air would be pumped into the patient's blood system. After extensive argument, the trial court denied the motion for a directed verdict.
Following a charge conference, the trial court gave the following jury instruction: "You are instructed that in performing services or acts not involving professional skill or decision and which are ministerial, ordinary or routine in character, a hospital employee assisting a surgeon is not regarded as the agent of said surgeon." Pursuant to the special verdict form, the jury found that the perfusionist was acting as Dr. Vargas's agent at the time of the operation and that Dr. Vargas was not independently negligent. The jury assessed damages of $600,000, and the trial court entered judgment upon the verdict.
Dr. Vargas and the University argue that the trial court erred in refusing to grant their motions for a directed verdict and for judgment notwithstanding the verdict since Dulzaides failed to meet her burden on the agency issue. We disagree. Whether a surgeon should be responsible for the actions of a perfusionist is apparently a question of first impression in Florida. However, this court has addressed the liability of a surgeon for the acts of hospital support personnel in other contexts. In Buzan v. Mercy Hosp., Inc., 203 So.2d 11 (Fla. 3d DCA 1967), we held that, using the agency test of the right to control, the status of a nurse performing a sponge count was for jury determination. The court also observed that the specific act of negligence had to be evaluated in order to determine whether a hospital employee would be "regarded as controlled solely by the surgeon or doctor." Id. at 13. The court further delineated a distinction between duties or acts involving professional skill, which would render the actor subject to the surgeon's control, and ministerial services, such as a sponge count, which would not implicate the borrowed servant doctrine. Id. Cf. Variety Children's Hosp., Inc. v. Perkins, 382 So.2d 331 (Fla. 3d DCA 1980) (hospital, not surgeon who had performed operation and had left hospital, was liable for negligence of residents who had exclusive responsibility for postsurgical care of patient).
A surgeon in the operating room may be liable for the acts of assisting personnel as the "captain of the ship," e.g. Hudmon v. Martin, 315 So.2d 516 (Fla. 1st DCA 1975); however, a surgeon will not be liable for the negligence of a fellow specialist such as an anesthetist or an intern. Dohr v. Smith, 104 So.2d 29 (Fla. 1958); Fortson v. McNamara, 508 So.2d 35 (Fla. 2d DCA 1987); Parmerter v. Osteopathic Gen. Hosp., 196 So.2d 505 (Fla. 3d DCA *308 1967). The rationale behind the rule that a trained professional will not be deemed a borrowed servant for whom a surgeon is vicariously liable was explicated by the Florida supreme court in Dohr:
The surgeon may have been generally in command from the beginning of the operation to the end or, as appellant terms him in the brief, "Captain of the ship," but it is clear to us that he and the anesthetist were working in highly expert fields peculiar to each and despite the common goal, ... their responsibilities were not inextricably bound together.
Id. at 32.
The record clearly shows that the errant perfusionist was not certified, unlike the licensed professionals in Dohr and Fortson.[3] Moreover, the perfusionist's responsibilities were "inextricably bound" to Dr. Vargas's since the heart surgery could not be performed without a perfusionist. We conclude that the trial court was correct in permitting the jury to decide whether the perfusionist's services were or were not ministerial in nature and the corresponding liability of Dr. Vargas.
The remaining issue which warrants analysis concerns the closing argument of Dulzaides's counsel. The Trust claims that the argument was so prejudicial and inflammatory that it deprived the Trust of its right to a fair trial. While we agree with the Trust that a portion of counsel's closing argument impermissibly alluded to matters not in evidence, the argument as a whole was not so inflammatory as to require a new trial. See Cox v. Shelley Tractor & Equip. Inc., 495 So.2d 841 (Fla. 3d DCA 1986). We find that the majority of the argument had "some logical nexus in deduction or analogy to the evidence and the facts of the instant case." Wright & Ford Millworks, Inc. v. Long, 412 So.2d 892, 893 (Fla. 5th DCA 1982) (quoting Gaston v. State, 134 Fla. 538, 184 So. 150 (1938)). Indeed, we are convinced by the amount of damages awarded that the jury was not prejudiced by counsel's impropriety. Dulzaides had asked for damages of $1.1 million. The Trust had recommended a figure of $240,000. The jury awarded $600,000, demonstrating an independent assessment of the case and a lack of impairment of the jury's dispassionate consideration through passion or prejudice. See, e.g., Melrose Nursery, Inc. v. Hunt, 443 So.2d 441 (Fla. 3d DCA 1984); Bew v. Williams, 373 So.2d 446 (Fla. 2d DCA 1979).
Finding no reversible error in the other points raised by these appeals, we affirm the final judgment in favor of Dulzaides.
Affirmed.
NOTES
[1] A surgeon cannot perform coronary bypass surgery without a pump technician or perfusionist to operate the heart-lung machine. The perfusionist must ensure that the heart-lung machine is functioning properly, that the blood levels in the oxygenator are maintained, and that the patient is receiving an adequate supply of blood.
[2] Dulzaides's claim against the Trust was based upon its liability for the negligence of the perfusionist as its employee. Prior to trial, the Trust admitted responsibility for the perfusionist's negligence.
[3] According to the testimony adduced at trial, the requirement that perfusionists be certified by the American Board of Cardiovascular Perfusion varies from hospital to hospital. Because the perfusionist in the instant case was not certified, we do not reach the question of whether a certified perfusionist would be considered a licensed professional and, therefore, not within the borrowed servant doctrine as per Fortson v. McNamara, 508 So.2d 35 (Fla. 2d DCA 1987).