699 So.2d 1033 (1997)
Jayne McELHANEY, R.N., NME Hospitals, Inc., d/b/a Hollywood Medical Center, Appellants.
v.
Walter UEBRICH, as Personal Representative of the Estate of John George Pfitze, and Theresa Kremer, as Personal Representative of the Estate of Ingeburg Kremer Pfitze, Appellees.
No. 95-3072.
District Court of Appeal of Florida, Fourth District.
October 1, 1997.
James C. Sawran of McIntosh, Sawran & Craven, P.A., Fort Lauderdale, and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellants/cross-appellees.
Ricki Lewis Tannen of Klein, Tannen & Cohen, P.A., Hollywood, for appellee/cross-appellant Dr. Barry D. Harris.
Milton S. Blaut of Abrams, Anton, Robbins, Resnick & Schneider, P.A., Hollywood, and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellees/cross-appellants Walter Uebrich and Theresa Kremer.
WARNER, Judge.
In a medical malpractice action, the jury found in favor of the plaintiffs/appellees, an injured wife and her husband, and against the defendants/appellants, a nurse and the hospital in which the plaintiff had been treated, absolving the plaintiff's treating physician *1034 from liability. The nurse and hospital appeal the final judgment of $1.6 million dollars, based upon the jury verdict. Appellants claim errors in the plaintiff's counsel's closing argument and in the jury's calculation of damages. Because the closing argument errors were not preserved, we affirm on that issue. Due to appellee's concession of error as to damages, we reverse to reduce the final judgment by the amount of medical expenses awarded.
This was a hotly contested trial during which the appellee claimed that either her doctor negligently prescribed an excessive dose of medication to her to avert the effects of a pulmonary embolism, or the nurse at the hospital administered a dose ten times stronger than that prescribed. Her claims against the physician included a claim for fraud, alleging the physician concealed the excessive dosage and its effects on the appellee by failing to record her claims of symptoms, which would have been consistent with an overdose of the medication. After ten days of divergent expert testimony, the jury imposed no liability on the doctor and found the appellants negligent.
While the appellants strenuously complain about the plaintiff's closing argument, their counsel never objected at trial to any of the allegedly offending argument. Counsel for the physician objected to one statement, but that objection was not joined by the appellants. See Longo v. State, 580 So.2d 212 (Fla. 4th DCA 1991). Even if we were to attribute this single objection to the appellants, we do not agree with them that it preserved for review all of the statements which they now claim were objectionable. The hospital's counsel's motion for a mistrial at the conclusion of the argument was insufficient to preserve the objection to the plaintiff's counsel's closing remarks.
Furthermore, most of the statements that the appellants find objectionable were in response to arguments made by the physician's counsel in closing argument and were directed at the doctor, not the hospital or the nurse. We could not conclude that these statements constituted fundamental error as to the appellants when they were not directed at them. In addition, the comments which were directed at the entire defense effort did not rise to the level of fundamental error and had a logical nexus to the evidence introduced at trial. See Vargas v. Dulzaides, 520 So.2d 306 (Fla. 3d DCA 1988). We find no reversible error.
The appellants also challenge the jury's verdict as to economic damages. They do not contest the pain and suffering or loss of consortium damages.[1] The jury's verdict as to economic damages read as follows:
8. What is the total amount (100%) of any damages for medical expenses?

A. In the past $ 10,000
B. In the future $300,000
C. The number of years over
 which future damages (if
 any) are intended to provide
 compensation. 33.4
D. What is the present value
 of those future damages $310,000

9. What is the total amount (100%) of any damages for lost earnings or earnings ability?

A. In the past $125,000
B. In the future $275,000
C. The number of years over
 which future damages (if
 any) are intended to provide
 compensation. 33.4
D. What is the present value
 of those future damages? $400,000

It is immediately apparent that the jury did not fill out the verdict form properly. Instead, it incorrectly added the amounts written in the past and future spaces together and put that combined value on the line for the present value of both the medical expenses and the lost earnings or earning ability. The appellants claim that the jury did not perform the calculations correctly and *1035 that the evidence did not support the jury's awards.
After oral argument, appellees filed a notice that they waived their right to past and future medical expenses. Based on their voluntary relinquishment, we reverse the final judgment as to these expenses.
In Lassiter v. International Union of Operating Engineers, 349 So.2d 622, 627 (Fla. 1976), the supreme court set out the standard of review for jury verdicts. It stated:
The appellate court may review the trial court ruling only for an abuse of discretion.
....
The appellate court should not disturb a verdict as excessive, where the trial court refused to disturb the amount, unless the verdict is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.
Appellants object to the calculation of the loss of earning capacity award based upon an "open market" theory of what appellee wife could have earned on the open market, despite the fact that she worked unpaid for her husband in their industrial cleaning business. The expert testified that, based upon appellee's education and skills, she could make $18,200 annually as an administrative assistant, a secretary, or a clerk. When the expert testified to this amount, the appellants did not object. Instead, they cross-examined the expert extensively and pointed out that the appellee had never earned the money that the expert now claimed constituted her earning capacity. The purpose of an award for lost future earning capacity is to compensate a plaintiff for the loss of capacity to earn income, not the actual loss of future earnings. See W.R. Grace & Co.-Conn. v. Pyke, 661 So.2d 1301 (Fla. 3d DCA 1995). The jury heard all of the evidence and concluded that she did have a loss of earning capacity. The jury's award was within the evidence.
The assessment of the lost earning capacity on the verdict form was not flawless. The expert broke down the earning losses into two periods. Period one consisted of past lost earnings and services. Period two consisted of the future earning capacity and loss of services over appellee's remaining work career of 14.1 years. The present value of this figure was $276,519.[2] The expert's total for period one (past) and period two (future) amounted to $400,714. While the expert used demonstrative aids to list these amounts for the jury, the jury did not have these aids as exhibits. Thus, in filling out the verdict form, the jury awarded $125,000 for past lost earning capacity, consistent with the expert's testimony (the total of periods one and two less period two), but awarded $275,000 as future lost earnings ability, when, in fact, that amount was the rounded-off present value of the future earnings. The jury then erroneously added the past damages to the present value of the future damages to arrive at $400,000 as the present value of future damages. The jury also used the life expectancy to calculate the damages rather than the 14.1 years of work expectancy, to which the economics expert testified.
We agree with appellees that despite the jury's error in filling out the verdict form, it clearly reflects their intent to award the loss of earning capacity damages, as calculated by the economics expert. The plaintiff submitted a final judgment which reflects the jury's intent to award $400,000, which included past and present value of earning capacity. When the jury's intent is apparent, the verdict is sufficient to support a judgment which conforms to that intent.[3]See Balsera v. A.B.D.M. & P. Corp., 511 So.2d 679 (Fla. 3d DCA 1987); see also Phillips v. *1036 Ostrer, 481 So.2d 1241 (Fla. 3d DCA 1985). The amounts discernible from the verdict are so close to the numbers contained in the expert testimony that the award can be affirmed. We distinguish Burgess v. Mid-Florida Service, 609 So.2d 637 (Fla. 4th DCA 1992), because the jury in that case failed to reduce the damages to present money value and awarded only future damages. In the instant case, the expert's figures were already in present money value form. While the jury did not apply the correct working life of 14.1 years, we do not see how that impaired the verdict in this case.
This case presents a classic example of why the requirements of section 768.77, Florida Statutes (1995), prescribing the use of itemized verdicts, are so unmanageable. The calculation of present money value is difficult, at best, even for persons with a facility for mathematics. And when experts fail to give the jury one of the verdict requirements, as the expert in the instant case did when he failed to testify to the total future damages prior to reduction to present money value, the jury has no guidance in filling out the form. If there are no math experts on the jury, it is quite probable that the verdict form will contain some type of calculation error. Because the likelihood of mathematical errors is so high, we think adherence to the principle that the award should be affirmed if the jury's intent is apparent is essential to avoid unnecessary new trials.
Except for the relinquished medical expenses, we affirm the final judgment. We reverse and remand for the trial court to reduce the final judgment by the amount of past and future medical expenses.
Affirmed in part; reversed in part and remanded.
POLEN and PARIENTE, JJ., concur.
NOTES
[1] The jury awarded the appellees $250,000 for the past pain and suffering of the wife, the injured party in this case; $640,000 in future pain and suffering; and $50,000 for loss of consortium to the husband.
[2] We note some typographical errors in the transcript with respect to the figures on economic losses. We can conclude they are typographical errors by doing the math which created the figures.
[3] We also note that the erroneous jury instruction might have caused the jury's mistake. In using Florida Standard Jury Instructions section 6.10 (1995), on reduction to present money value, the court read the wrong bracketed phrase in the charge, as is apparent from the note on use. Instead of telling the jury that both the amount of future economic damages and their present money value should be stated in the verdict, the court instructed the jury that only the present money value should be stated in the verdict. The jury followed this instruction.