631 So.2d 375 (1994)
Gary Paul CRAIG and Elizabeth Craig, Appellants,
v.
GATE MARITIME PROPERTIES, INC., a Florida corporation, Appellee.
No. 92-3681.
District Court of Appeal of Florida, First District.
February 11, 1994.
*376 Raymond I. Booth III, Eddie Easa Farah, Farah & Farah, P.A., Jacksonville, for appellants.
Daniel C. Shaughnessy and Samuel H. Lanier, Coker, Myers, Schickel, Cooper & Sorenson, P.A., Jacksonville, for appellee.
WOLF, Judge.
Gary Craig and Elizabeth Craig, plaintiffs in a liability action, appeal from a final summary judgment entered in favor of Gate Maritime Properties, Inc. (Gate). We find that the trial court erred in granting the summary judgment and reverse.
The U.S. Marine Corps has a ship at Blount Island. The ship contains equipment necessary for emergency deployment. The Marine Corps contracted with Bendix Field Engineering Corporation (Bendix) for maintenance and repair of that equipment. One month prior to contracting with Bendix for this job, the marines leased 59.1 acres and 256,000 square feet of building space at Blount Island from Gate. The purpose of this lease was to provide the marines with a land-based facility at which Bendix could perform the maintenance and repair services. Bendix was responsible for moving the equipment from the ship (tanks, bulldozers, cargo containers) and over the roads to the repair sites.
The lease with the marines required Gate to provide security services for the leased premises. Gate contracted with Gray's Guard Service, for whom appellant, Gary Craig, worked. When equipment was removed from the ship at the Jacksonville Port Authority facility (JPA), it would be driven through a gate separating JPA and Gate property. It would then reach an intersection that was shaped like a T. This intersection was more than one mile from the ship, and two miles from the guard shack manned by Gray's Guard Service. It was at this intersection where Craig was injured.
Craig was injured on January 31, 1989 at a few minutes after 6:00 in the morning. It was dark, foggy, and drizzly at the time. It was Craig's first or second night working security on the island. He was traveling at a speed estimated to be 35 m.p.h. to 45 m.p.h. (speed limit was 30 or 40 m.p.h.). Craig did not see the unmarked intersection, and collided with a roll of steel matting adjacent to the roadway. The matting was used to protect heavy equipment from digging sand when it made the turn. The steel matting had been rolled up and placed alongside the road by Bendix approximately two days before the accident.
Craig filed a complaint against Gate, alleging that as owner of the property, Gate negligently failed to provide adequate warnings of the hidden dangers it was aware of or should have been aware of at the time of the accident, and failed to reasonably delineate the traveled portion of the road from adjacent open fields. Eventually, Gate filed a motion for final summary judgment, and alleged that the road was deliberately unpaved for travel by military vehicles. The maintenance of the road and upkeep of the road for use by military vehicles was undertaken by the government or its subcontractor, Bendix, according to the motion. Additionally, Gate alleged that the road was relimerocked several days before the accident, the traveled portion of the road was clearly delineated from the surrounding land and the existence of the steel matting was clearly observable in the open field.
The evidence presented at the summary judgment hearing concerning the control of the roads included a copy of the lease between Gate and the marines. The description of the leased premises specifically excluded roads and utility facilities otherwise within the leased premises. The lease required *377 Gate to maintain the access roads as to normal wear and tear. The lease also requires Gate to furnish maintenance of unpaved roads beyond normal wear and tear if requested by the government. Gate retained the right to enter the premises for inspection and to make repairs. Depositions presented also indicated that Gate's general manager, Mr. Mantia, used the dirt roads when he drove around daily to inspect the premises. The deposition testimony of Mr. Mantia, indicated that the government never requested Gate to maintain the dirt road in question. He also stated that he did not interpret the lease to place maintenance responsibilities on Gate.
The trial court granted the motion for summary judgment, finding that there were no genuine issues of material fact.
The main issue before the court pertaining to the propriety of granting the summary judgment is what duty, if any, is owed by a commercial lessor to invitees upon the leased premises.[1]
Summary judgments should only be granted where it is demonstrated that there exists no issues of material fact. Hancock v. Department of Corrections, 585 So.2d 1068 (Fla. 1st DCA 1991), rev. denied, 598 So.2d 75 (Fla. 1992). The movant's proof must be conclusive, such that all reasonable inferences which may be drawn in favor of the opposing party are overcome. Landers v. Milton, 370 So.2d 368, 370 (Fla. 1979); Holl v. Talcott, 191 So.2d 40, 43-44 (Fla. 1966); Lenhal Realty, Inc. v. Transamerica Commercial Finance Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). "[I]f the record raises even the slightest doubt that an issue might exist, summary judgment is improper." Holland v. Verheul, 583 So.2d 788, 789 (Fla. 2d DCA 1991). In the instant case, there are disputed issues of material fact concerning the level of control maintained over the road by appellee.
Generally, the doctrine of caveat emptor applies to the sale or lease of commercial real property. Haskell Co. v. Lane Co. Ltd., 612 So.2d 669 (Fla. 1st DCA 1993); Veterans Gas Co. v. Gibbs, 538 So.2d 1325 (Fla. 1st DCA 1989). Under the doctrine, a lessor or seller cannot be liable for injuries to a buyer or other party caused as a result of a defect existing at the time the property was sold or leased. Haskell Co. v. Lane Co. Ltd., supra at 671. In cases involving a lease, however, the legal relationship (including possession and control of the lessor over the property) between the owner and the property will not necessarily be totally severed. The extent of responsibility for injuries occurring on the property during the term of the lease will depend upon the extent the owner maintains a possessory interest or control over the instrumentality or land which contains a defect which is alleged to have been a proximate cause of the injuries suffered by a plaintiff. Bovis v. 7-Eleven, Inc., 505 So.2d 661 (Fla. 5th DCA 1987). Thus, while an owner will not be responsible for injuries caused solely by the lessee's operations and activities on the leased premises, the owner may be liable to a third party where they have responsibility for maintenance, inspection, or oversight under the terms of the lease, or where the owner has maintained a possessory interest in the property. Bovis, supra at 664.
The crux of the cause of action for premises liability is not legal title or ownership, but the failure of a person who is in actual possession and control (be it the owner, an agent, a lessee, a construction contractor, or other possessor with authority or control), to use due care to warn or to exclude, licensees and invitees from areas known to the possessor to be dangerous because of operations or activities or conditions.
Haynes v. Lloyd, 533 So.2d 944, 946 (Fla. 5th DCA 1988).
*378 In addition, the fact that there may be joint responsibility or control over premises does not relieve a party from responsibility. A duty, and therefore liability for breach of that duty, may rest upon more than one party:
[A]nyone who assumes control over the premises in question, no matter under what guise, assumes also the duty to keep them in repair, and the fact that others are under a duty which they fail to perform is no defense to one who has assumed control, thereby bringing others within the sphere of danger.
Arias v. State Farm Fire & Casualty Co., 426 So.2d 1136, 1138 (Fla. 1st DCA 1983); see also Levy v. Home Depot, Inc., 518 So.2d 941 (Fla. 3d DCA 1987) (commercial tenant may possess duty concurrent with landlord to maintain premises in reasonably safe condition); Bovis, supra (commercial tenant had a duty to maintain the premises in reasonably safe condition despite the fact that the landlord had contractually agreed to maintain the premises).
In the instant case, there are disputed issues of material fact concerning the level of control over the roadways. The language of the lease appears to provide for a significant level of control over the roads to be retained by Gate. Deposition testimony indicates that Gate continued to exercise some level of control over the roads, including having their general manager ride around the property daily, and at times asking Bendix to grade roads. While Gate's general manager indicates that it was his understanding that the marines would maintain the dirt roads, his understanding would not necessarily be binding on the finder of fact as to whether the agreement with the marines would preclude a finding of joint responsibility. Under these circumstances, it was error to enter a summary judgment in favor of Gate.
Reversed and remanded for further proceedings.
ZEHMER, C.J., and MINER, J., concur.
NOTES
[1] We would initially note that while both parties cite to numerous portions of the record concerning the condition of the roadway and the placement of the matting, this evidence is only pertinent as to whether the roads were negligently maintained rather than whether a legal duty existed on the part of Gate. The issue of whether a negligent condition existed on premises generally involves disputes of material fact which will preclude summary judgment. Chelton v. Tallahassee-Leon County Civic Center Authority, 525 So.2d 972, 975 (Fla. 1st DCA 1988), rev. denied, 534 So.2d 402 (Fla. 1988); Bryant v. Lucky Stores, Inc., 577 So.2d 1347 (Fla. 2d DCA 1990). Clearly, as demonstrated by the conflicting parts of the record cited by the parties, disputes of material facts exist as to the negligence issue.