WALLACE, Judge.
In a premises liability action brought by Ethel Metsker, the circuit court entered a *975 final summary judgment in favor of Carefree/Scott Fetzer Company, d/b/a Carefree of Colorado (Carefree). Ms. Metsker appeals. The circuit court ruled that Carefree did not owe a duty of care to Ms. Metsker because the undisputed facts established that Carefree’s sales representative, an independent contractor, operated the premises where Ms. Metsker was injured. Because Carefree failed to establish the absence of a genuine issue of material fact concerning its control of the subject premises, we reverse. We also hold that genuine issues of material fact remain concerning whether Carefree’s sales representative was in fact an independent contractor or Carefree’s agent or employee.
I. THE FACTS
Ms. Metsker was injured on January 20, 2008, during her visit to the 2008 Florida RV SuperShow (the RV SuperShow), which was held at the Florida State Fairgrounds in Tampa.[1] The RV SuperShow is an annual event that is open to the public. The RV SuperShow features displays of recreational vehicles and related accessories and services, together with entertainment, food, seminars, and general information about recreational vehicles and related products and services. Patrons must pay a fee for parking and an admission fee to gain entrance to the RV Super-Show grounds.
The RV SuperShow is organized, sponsored, and managed by the Florida RV Trade Association, Inc. (the FRVTA). Carefree manufactures and sells RV awning and accessory products. In May 2007, Carefree contracted with the FRVTA for three display booths at the 2008 RV Su-perShow. The “Booth Exhibitor/Vendor Space Contract” (the Booth Contract) was signed by David Jones, an employee of Dealer Resources Group (DRG), on behalf of Carefree. DRG is the company that Carefree contends was an independent contractor and not an employee or agent of Carefree.
In pertinent part, the Booth Contract prohibited Carefree from assigning or subletting its assigned booths to others. The Booth Contract also required Carefree to protect and indemnify the FRVTA against any and all losses and claims arising out of or related to any accident or other occurrence in connection with Carefree’s participation in the show. Together with the indemnity provision, the Booth Contract required Carefree to provide the FRVTA with a certificate of comprehensive general liability and automobile insurance with a limit not less than one million dollars, naming the FRVTA as an additional insured. Finally, the Booth Contract required Carefree “to keep [its] exhibits open and fully manned with proper representatives during scheduled hours on public days.”
Carefree contracted with others to provide sales services for its products. One of the entities with which Carefree contracted for sales services was DRG. In 2007, Carefree and DRG had executed a “Sales Representative Agreement” (the Sales Rep Agreement) in which Carefree appointed DRG as its sales representative for certain territories, including Florida. The Sales Rep Agreement expressly provided that DRG was an independent contractor and not an agent or employee of Carefree.
Carefree arranged for DRG to set up and staff its booth[2] at the RV SuperShow. *976 However, DRG was not Carefree’s only representative present at the RV Super-Show. Carefree had at least two other representatives — Wally Ford and Jerry Burhans — in the booth on its behalf at the RV SuperShow.[3] Neither Mr. Ford nor Mr. Burhans was associated with DRG. Carefree claimed that Mr. Ford and Mr. Burhans were also independent contractors.
A metal pole fell and struck Ms. Metsker while she was seated in a booth next to the Carefree booth. Details are sketchy concerning the chain of events leading to the fall of the pole on Ms. Metsker. Carefree suggested in its motion for summary judgment “that the metal pole was an isolated center arm rafter [that was] placed upon a back wall grid” display by David Jones. Later, a person or persons unknown moved the center arm rafter from the back wall and placed it upright in the booth. Next, the same person or another person dislodged the center arm rafter from its precarious position in the booth, causing it to fall and hit Ms. Metsker on the head. She sustained serious injuries as a result of the unexpected blow. Later, DRG claimed that Wally Ford was in control of the booth when the incident occurred.
II. THE PROCEDURAL BACKGROUND
Ms. Metsker filed an action against Carefree and the FRVTA for negligence. In her complaint, Ms. Metsker alleged that “[e]mployees, agents or persons holding themselves out as the apparent agents of Carefree of Colorado constructed, operated and maintained a display booth on behalf of Carefree of Colorado at the 2008 Florida RV SuperShow” and that Carefree was “vicariously responsible for the actions of its employees, agents or apparent agents.”
In Carefree’s answer to the complaint, it admitted that it had contracted with the FRVTA for a booth in the exhibition hall of the RV SuperShow for the display of its products, but it denied any negligence and raised various affirmative defenses. Carefree also filed a third-party complaint against DRG for indemnity and contribution. In its third-party complaint, Carefree alleged that “DRG breached its duty of reasonable care by failing to properly and safely secure a metal display pole in the Carefree of Colorado exhibit booth which fell causing [Ms. Metsker’s] alleged injuries.”
After the parties had conducted discovery, Carefree moved for summary judgment. In its motion, Carefree admitted that it had rented the booth for the display of its products but asserted that it “did not construct, control, or operate the Carefree of Colorado display booth.” Instead, Carefree claimed that “DRG was acting as an independent contractor and not [as] an employee or agent” in operating the booth and that Carefree “cannot be held liable under the [d]octrine of [a]pparent [a]gen-cy” for the negligence of its independent contractor. The tidal court agreed, ruling that DRG was an independent contractor and that Carefree owed no duty of care to Ms. Metsker. Accordingly, the trial court entered a summary final judgment in favor of Carefree. This appeal followed.
III. THE STANDARD OF REVIEW
The standard of review for an order granting a motion for summary judgment is de novo and requires a two-pronged analysis. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 *977 (Fla.2000). Summary judgment is proper only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, Huntington Nat’l Bank v. Merrill Lynch Credit Carp., 779 So.2d 396, 398 (Fla. 2d DCA 2000), and (2) the moving party is entitled to a judgment as a matter of law, Aberdeen at Ormond. Beach, 760 So.2d at 130. “If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.” Holland v. Verheul, 583 So.2d 788, 789 (Fla. 2d DCA 1991).
IV. WHO CONTROLLED THE BOOTH: CAREFREE, DRG, OR BOTH OF THEM?

A. The Applicable Law.

At the hearing on the motion for summary judgment, Ms. Metsker argued, as she does on appeal, that Carefree owed her a nondelegable duty to keep its booth in a reasonably safe condition because it maintained control over the premises. In response to this argument, the circuit court commented, “It was Carefree’s booth but they weren’t property owners, they were squatters. They were renters like the others.” Here, the circuit court fell into error.
In a premises liability case, the issue of whether a party has a duty of care does not depend on ownership or title to the premises. Instead, the appropriate inquiry is whether the party has the ability to exercise control over the premises. The First District has summarized the applicable rule as follows:
The liability of an occupant of real property for injuries caused by an alleged dangerous defective condition on the premises depends generally upon his control of the property, regardless of whether he has title thereto, or whether he has a superior right to possession of property which is in the possession and control of another. Thus, anyone who assumes control over the premises in question, no matter under what guise, assumes also the duty to keep them in repair, and the fact that others are under a duty which they fail to perform is no defense to one who has assumed control, thereby bringing others within the sphere of danger.
Arias v. State Farm Fire & Cas. Co., 426 So.2d 1136, 1138 (Fla. 1st DCA 1983) (citation omitted); see also Lukancich v. City of Tampa, 583 So.2d 1070, 1073 (Fla. 2d DCA 1991) (“Even if the City does not own the property, if it assumed control over the property, it also assumed the responsibility to exercise the requisite degree of care toward the various classes of persons who are on the premises.” (citing Arias, 426 So.2d 1136)).
Two or more parties may share control over land or business premises. Under these circumstances, “the fact that there may be joint responsibility or control over premises does not relieve a party from responsibility. A duty, and therefore liability for breach of that duty, may rest upon more than one party[.]” Craig v. Gate Mar. Props., Inc., 631 So.2d 375, 378 (Fla. 1st DCA 1994). “In addition, the fact that more than one person is under a duty and one fails to perform is no defense to one who has assumed control.” Worth v. Eugene Gentile Builders, 697 So.2d 945, 947 (Fla. 4th DCA 1997). Thus a landowner and an independent contractor who are in charge of business premises jointly may each owe a duty to business invitees to keep the premises in a reasonably safe condition. See Improved Benevolent & Protected Order of Elks of the World, Inc. v. Delano, 308 So.2d 615, 618 (Fla. 3d DCA 1975).
*978 The case law in Florida has required the owners or operators of business premises open to the public “to exercise reasonable care to maintain their premises in a safe condition.” Owens v. Publix Supermarkets, Inc., 802 So.2d 315, 320 (Fla.2001) (citing Everett v. Rest. & Catering Corp., 738 So.2d 1015, 1016 (Fla. 2d DCA 1999)), superseded on other grounds by § 768.0710, Fla. Stat. (2002). In 2002, the legislature codified the duty of care owed by the person or entity in control of business premises in section 768.0710.[4] The statute provides, in pertinent part:
(1) The person or entity in possession or control of business premises owes a duty of reasonable care to maintain the premises in a reasonably safe condition for the safety of business invitees on the premises, which includes reasonable efforts to keep the premises free from transitory foreign objects or substances that might foreseeably give rise to loss, injury, or damage.
This duty of care is nondelegable. See Armiger v. Associated Outdoor Clubs, Inc., 48 So.3d 864, 876 (Fla. 2d DCA 2010); Food Lion, LLC v. Monument/Julington Assoc. Ltd. P’ship, 939 So.2d 1106, 1107-08 (Fla. 1st DCA 2006); Restatement (Second) of Torts § 344 (1965).

B. Discussion.

Here, we are called upon to decide whether Carefree established the nonexistence of any material fact concerning its possession or control of the premises where Ms. Metsker was injured.[5] Upon a review of the record, we conclude that Carefree failed to make the required showing for summary judgment. Indeed, there are multiple facts in the record tending to establish that Carefree retained control of the booth. At the very least, these facts tend to establish that Carefree and DRG shared joint control of the booth.
First, Carefree — not DRG — rented the booth in its own name and paid the required booth rental fee. Second, the terms of the Booth Contract prohibited Carefree from assigning or subletting its booth to others. Third, the booth was identified to patrons of the RV SuperShow with a Carefree sign; there was no other name on the booth. Fourth, the only products on display in the booth belonged to Carefree; DRG did not use the booth to display any other vendor’s products. Fifth, in the Booth Contract, Carefree agreed to indemnify the FRVTA against loss and provided a certificate of insurance in a substantial amount naming the FRVTA as an additional insured. It is unlikely that Carefree would have agreed to indemnify and to provide the FRVTA with a certificate of insurance for premises over which Carefree retained no right of control. Finally, and contrary to Carefree’s argument, there is a factual dispute about whether Carefree retained control over the personnel in the booth. Carefree sent Wally Ford and Jerry Burhans — two other “independent contractors” not associated with DRG — to the RV SuperShow to assist in staffing the Carefree booth. DRG even claimed that Mr. Ford was in control of the booth when Ms. Metsker *979 was injured. Carefree’s exercise of the right to direct the staffing of the booth tends to support an inference that it at least shared control of the booth with DRG. See Goss v. Human Servs. Assocs., Inc., 79 So.3d 127 (Fla. 5th DCA 2012) (holding that there was a genuine issue of material fact with regard to whether the operator of a group care facility or its subcontracted management/consultant company was in actual control of the facility at the time of a resident’s injury, precluding summary judgment in favor of the operator).
In light of the evidence in the record, Carefree failed to establish the absence of a genuine issue of material fact concerning its control of its booth at the RV Super-Show. And Carefree’s exclusive or joint control of the booth would give rise to a duty to keep the booth in a reasonably safe condition for the safety of business invitees such as Ms. Metsker. It follows that the circuit court erred in entering a final summary judgment in favor of Carefree.
V. DRG: INDEPENDENT CONTRACTOR, OR AGENT/EMPLOYEE?
We must still decide whether the circuit court erred in entering a summary judgment determining that DRG was an independent contractor for Carefree. In her complaint, Ms. Metsker alleged that the “[ejmployees, agents or persons holding themselves out as the apparent agents of Carefree of Colorado constructed, operated and maintained a display booth on behalf of Carefree of Colorado at the 2008 Florida RV SuperShow.” In addition, Ms. Metsker alleged that Carefree “is vicariously responsible for the actions of its employees, agents or apparent agents.” The primary thrust of Carefree’s motion for summary judgment was to take issue with Ms. Metsker’s characterization of DRG as Carefree’s employee or agent.
Ms. Metsker responded to the summary judgment motion with a memorandum in which she disputed Carefree’s position that DRG was an independent contractor, not an employee or agent. In support of her position, Ms. Metsker pointed to evidence in the record that — in her view — raised genuine issues of material fact concerning Carefree’s claim that DRG was an independent contractor. Before examining the evidence in the record, we will briefly review the law pertinent to a determination of independent contractor status.
In Cantor v. Cochran, 184 So.2d 173 (Fla.1966), the Supreme Court of Florida noted that it had previously adopted the factors discussed in the Restatement (Second) of Agency § 220 (1958) for determining whether a person acting for another is a servant or an independent contractor. The Restatement provides:
(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other’s control or right to control.
(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumental! *980 ties, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.
As noted in paragraph (2) of the Restatement, the list of factors to be considered is not an exclusive one. See also Harper ex rel. Daley v. Toler, 884 So.2d 1124, 1130 (Fla. 2d DCA 2004) (“The Restatement sets forth a nonexclusive list of factors that are relevant to making the judgment whether a particular relationship is an employment (servant) relationship or an independent contractor relationship^]” (emphasis added)). More important, the factors discussed in paragraph (2) are no more than examples of facts that may help to determine whether the standard stated in paragraph (1) has been met. In other words, the question of independent contractor status is not dependent on a laundry list of tests, but upon a determination of whether “a person employed to perform services in the affairs of another ... is subject to the other’s control or right to control.” Restatement (Second) of Agency § 220(1) (1958); see also T & T Commc’ns, Inc. v. State, Dep’t of Labor & Emp’t Sec., 460 So.2d 996, 998 (Fla. 2d DCA 1984) (“[I]n making a determination of employee or independent contractor status, the most important factor is the extent of control exercised by the employer.” (citation omitted)).
Carefree points to the Sales Rep Agreement between it and DRG as evidence of the latter’s independent contractor status. However, the provision in the Sales Rep Agreement stating that DRG was an independent contractor and not an agent or employee of Carefree does not end the inquiry. “[A] statement in an agreement between parties that one is an independent contractor ... is not disposi-tive of that issue. A jury may infer the existence of an agency even when both the principal and the agent deny it.” Singer v. Star, 510 So.2d 637, 640 (Fla. 4th DCA 1987) (citation omitted). Instead, “[t]he standard for determining whether an agent is an independent contractor is the degree of control exercised by the employer or owner over the agent.” Id. (quoting Nazworth v. Swire Fla., Inc., 486 So.2d 637, 638 (Fla. 1st DCA 1986)).
We agree with Ms. Metsker that evidence in the record raises genuine issues of material fact about the extent of Carefree’s control over DRG in the performance of its services. The first item is the Booth Contract between Carefree and the FRVTA. Carefree concedes that it, not DRG, was the contracting party with the FRVTA. But the Booth Contract was signed by David Jones, a DRG employee, on Carefree’s behalf. Carefree does not contend that Mr. Jones’ signature was unauthorized. The fact of Mr. Jones’ execution of the Booth Contract on Carefree’s behalf raises an inference that DRG — or Mr. Jones in his individual capacity — -was acting as an agent for Carefree instead of as an independent contractor.
Second, Ms. Metsker observes that Carefree provided the FRVTA with a certificate of liability insurance naming it as an additional insured. Carefree also agreed to indemnify the FRVTA against losses or claims arising from Carefree’s participation in the RV SuperShow. In Barnett v. Butler, 112 So.2d 907 (Fla. 2d DCA 1959), this court held that proof of insurance coverage for particular claims is *981 admissible in evidence where such proof is necessary for the resolution of a disputed issue. In Barnett, the disputed issue was the ownership of a vehicle. Id. at 908. 'The Barnett court cited Biggins v. Wagner, 60 S.D. 581, 245 N.W. 385 (1932), in support of its holding. In Biggins, the Supreme Court of South Dakota held that the procurement by Fantle Brothers, Inc., of a policy of insurance covering Wagner, a truck driver, was material to the question of whether Wagner was an independent contractor or a servant of Fantle Brothers, Inc.:
Fantle Bros., Inc., are now taking the position that Wagner was an independent contractor for whose acts it was in no way responsible. The inquiry at once arises: Why, if not responsible for the acts of Wagner, should the company be interested in being protected by liability insurance? Is it not at least evidence in the nature of admission that the company was liable for the negligent acts of Wagner?
Id. at 387. In the case before us, one might paraphrase the South Dakota court’s inquiry as follows: Why, if not responsible for the acts of DRG, should Carefree be interested in providing a cer-tifícate of liability insurance to the RV Supershow’s sponsor and in agreeing to indemnify the sponsor for DRG’s actions? We conclude that these facts would tend to support a finding that DRG was Carefree’s agent or employee, not an independent contractor.
We also note that the facts in this case correspond with several of the factors suggested in section 220 of the Restatement for determining whether a person is acting as a servant or independent contractor. For example, a Carefree executive testified by deposition that he decided who would operate the booth and that he chose DRG to staff the booth. This executive was also responsible for shipping Carefree products directly to the venue for use in Carefree’s display. In addition, there was evidence that Carefree made the decisions about which Carefree products would be displayed at the RV SuperShow — and, in particular — the awning display of which the falling rafter formed a part. In other words, Carefree’s sponsorship, funding, and direction were essential to DRG’s attendance at the RV SuperShow. And, as noted above, there was evidence that Carefree sent at least two individuals not associated with DRG to help staff the booth, one of whom was in the booth at the time of Ms. Metsker’s injury. Thus there are genuine issues of material fact concerning who made the decisions regarding how the trade show would be staffed, who actually controlled the operation of the booth at the time of the accident, and who supplied the materials. These facts implicate considerations (2)(a), (e), and (f) of section 220. In addition, both parties are in essentially the same business — the sale of RV accessories — implicating considerations (2)(b), (h), and (j) of section 220.
After reviewing the evidence in the record, we conclude that the circuit court erred in concluding that DRG “was a true [independent [Contractor beyond any reasonable doubt.” There were multiple genuine issues of material fact bearing on whether DRG was an independent contractor or an agent. These genuine issues of material fact precluded the entry of summary judgment on this question. See Alexander v. Morton, 595 So.2d 1015, 1016-18 (Fla. 2d DCA 1992) (reversing a final summary judgment predicated on a finding that an air-conditioning installer was an independent contractor where several of the Restatement factors raised a fact question about the existence of an employer-employee relationship); Pate v. Gilmore, 647 So.2d 235, 236 (Fla. 1st DCA 1994) (reversing a final summary judgment based on a finding that a part-time stable hand was an independent contractor where *982 several of the Restatement factors were more consistent with the status of an employee than an independent contractor); cf. Kane Furniture Corp. v. Miranda, 506 So.2d 1061, 1064-66 (Fla. 2d DCA 1987) (holding that carpet installers were independent contractors as a matter of law where only one of the Restatement factors favored the conclusion that the carpet installers were employees).
VI. CONCLUSION
The issues of responsibility for control of the booth and DRG’s status as an independent contractor remain for submission to a jury. Accordingly, we reverse the summary final judgment in favor of Carefree and remand for further proceedings.
Reversed and remanded.
KELLY and KHOUZAM, JJ„ Concur.

 The facts — which are drawn from the pleadings, the depositions on file, and the affidavits in the record — are reviewed in the light most favorable to Ms. Metsker as the nonmoving party against whom the summary judgment was entered. See Markowitz v. Helen Homes of Kendall Corp., 826 So.2d 256, 258-59 (Fla. 2002).

. Carefree's three booths were adjacent to each other. For convenience, we will refer to Carefree’s three booths in the singular.

. The record suggests that Mr. Burhans' wife, who is not further identified, was also present in the booth.

. Section 768.0710 became effective May 30, 2002. Ch. 2002-285, §§ 1-2, at 2125-26, Laws of Fla. Section 768.0710 was repealed effective July 1, 2010. Ch. 2010-8, §§ 2-3, at 182-83, Laws of Fla. The legislature replaced section 768.0710 with a new section 768.0755. Ch. 2010-8, § 1, at 182, Laws of Fla.

. We recognize that Ms. Metsker was injured while she was seated in a booth next to the Carefree booth, not in the Carefree booth itself. However, under these circumstances, Carefree may still have owed a duty of due care to Ms. Metsker. See Short v. Lakeside Cmty. Church, 700 So.2d 772, 773 (Fla. 2d DCA 1997); Johnson v. Howard Mark Prods., Inc., 608 So.2d 937, 938 (Fla. 2d DCA 1992).