NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LEE COUNTY DEPARTMENT OF )
TRANSPORTATION, )
                       )
       Appellant, )
                       )
v. )         Case No.  2D16-234
                       )
THE ISLAND WATER ASSOCIATION, )
INC., and ANNETTE CANTALUPO, )
                       )
       Appellees. )
_____)

Opinion filed April 19, 2017.

Appeal from the Circuit Court for Lee County;
Elizabeth V. Krier, Judge.

James L. Holloway, III, Assistant County
Attorney, Lee County Attorney's Office,
Fort Myers, for Appellant.

Michael R. D'Lugo of Wicker, Smith,
O'Hara, McCoy & Ford, P.A., Orlando, for
Appellee The Island Water Association, Inc.

No appearance for Appellee Annette
Cantalupo.


SILBERMAN, Judge.


           Annette Cantalupo tripped and fell over a water valve located on a county

road.  As a result, she filed a negligence action against Lee County Department of

Transportation and The Island Water Association, Inc. Lee County appeals a final summary judgment in favor of Island Water in which the trial court determined that Island Water did not have a legal duty to repair the county road around its water valve or warn the public. Lee County is also challenging the trial court's ruling to exclude evidence of subsequent remedial measures. Because the trial court erred as a matter of law in determining that Island Water did not have a legal duty, we reverse and remand for further proceedings. We also address the issue regarding evidence of subsequent remedial measures for purposes of remand. Based on this disposition, we need not address Lee County's remaining issue raised on appeal.[1]

In her amended complaint against Lee County and Island Water, Cantalupo alleged that on December 5, 2010, she was legally walking on a roadway when she tripped and fell over a water valve cover (the valve) that was protruding in the roadway, causing her to sustain injuries. The valve was on Captiva Drive in an area used by pedestrians. Defendant Lee County owns Captiva Drive and Defendant Island Water owns the valve and the pipes underneath it. Cantalupo alleged that Island Water owed her a duty to exercise reasonable care for her safety. She further alleged that Island Water breached that duty by negligently failing to maintain the valve in the roadway, failing to inspect the valve to determine whether the protruding valve constituted a hazard to pedestrians, failing to warn Cantalupo of the danger of the protruding valve, and failing to correct the unreasonably dangerous condition of the

---

[1]In a related appeal, Cantalupo raises the same issues Lee County raises here, and for the reasons expressed in this opinion, we reverse and remand in Cantalupo's appeal. See Cantalupo v. Island Water Ass'n, No. 2D16-363 (Fla. 2d DCA April 19, 2017).

valve.  In addition, Cantalupo alleged that Island Water knew or should have known of this foreseeably dangerous condition but failed to take any precautions to alleviate the dangerous condition or warn of it.

At the time of Cantalupo's accident, the asphalt surrounding the valve had separated from around the valve.  It appeared that the asphalt had sunk such that the asphalt was no longer flush with the valve, causing the valve to protrude above the asphalt.  Approximately three months after the accident, Island Water had repairs made to the asphalt around the valve to bring the asphalt flush with the valve.

Island Water filed motions in limine on a number of matters, and after a hearing, the trial court entered an order on motions in limine and on legal duties in which it excluded evidence of subsequent remedial measures.  In one of its motions in limine, Island Water also sought to exclude evidence that it had a legal duty to maintain the asphalt surrounding the valve.  In its order, the trial court determined that Island Water did not have a duty to Cantalupo to maintain the road surrounding the valve based on its repair of the road around the valve after the accident or because it was contractually obligated to maintain the valve.

Cantalupo filed a motion for reconsideration of the in-limine order, and Island Water filed a motion for summary judgment as to the duty issue.  Island Water asserted that there was a pure issue of law as to whether Island Water had any legal duty before the accident to maintain the asphalt surrounding the valve.  The trial court conducted one hearing on both motions.  Cantalupo argued at the hearing that Island Water had a legal duty in addition to its contractual duty.  The trial court denied the motion for reconsideration and entered a final summary judgment in favor of Island

Water.  The trial court relied on an agreement between Island Water and Lee County to determine: (1) Island Water's only duty to the public was as to its equipment, and (2) Island Water had no duty in a circumstance where there was a depression in the asphalt around the valve and Island Water did not install the asphalt or damage it.

**Island Water's Legal Duty**

Lee County contends that the trial court erred in determining that Island Water had no duty to the public to warn of or correct a protruding water valve in a public roadway.  Our review is de novo because the determination of the duty element of negligence is a question of law.  Chirillo v. Granicz, 199 So. 3d 246, 248 (Fla. 2016).  In addition, the review of a summary judgment is de novo.  Id. at 249.  To uphold a summary judgment, there must be no genuine issue of material fact and the moving party must be entitled to a judgment as a matter of law.  Cook v. Bay Area Renaissance Festival of Largo, Inc., 164 So. 3d 120, 122 (Fla. 2d DCA 2015).  If there is a possibility of a genuine issue of material fact, summary judgment is inappropriate.  See id.

In Chirillo, the Florida Supreme Court recognized that McCain v. Florida Power Corp., 593 So. 2d 500 (Fla. 1992), is the starting point in negligence cases for an analysis of the duty element.  199 So. 3d at 249.  The McCain court explained that foreseeability is related to both duty and proximate cause but in different ways.  593 So. 2d at 502.  "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."  Id. (quoting Kaisner v. Kolb, 543 So. 2d 732, 735 (Fla. 1989)).  Duty "is a minimal threshold *legal* requirement for opening the courthouse doors."  Id. (footnote omitted).  The McCain court "described four sources of duty: statutes, judicial

- 4 -

interpretation of statutes, other judicial precedent, and the general facts of the case." Chirillo, 199 So. 3d at 250 (citing McCain, 593 So. 2d at 503 n.2). Here, the general facts of the case give rise to the duty based on the principle that "a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." McCain, 593 So. 2d at 503.

The issue of duty does not depend on ownership of the property. Cook, 164 So. 3d at 122; Metsker v. Carefree/Scott Fetzer Co., 90 So. 3d 973, 977 (Fla. 2d DCA 2012). A party who has control over premises has a duty of care to keep the premises in repair. Cook, 164 So. 3d at 122; Metsker, 90 So. 3d at 977. And when two parties share control of the premises, both parties may have a duty of care. Metsker, 90 So. 3d at 977; Craig v. Gate Maritime Props., Inc., 631 So. 2d 375, 378 (Fla. 1st DCA 1994).

"As a general rule, utilities have 'a duty to exercise care, both in the location or construction and in the use and maintenance of its lines,' poles, and equipment." Webb v. Glades Elec. Coop., Inc., 521 So. 2d 258, 259 (Fla. 2d DCA 1988) (quoting Padgett v. W. Fla. Elec. Coop., Inc., 417 So. 2d 764, 766 (Fla. 1st DCA 1982)). Applying the McCain analysis, when Island Water decided to operate utilities in a public roadway, it assumed a common law duty to maintain its valves to allow the public to safely navigate on or around them. On the date of the accident, the valve was sticking up one and a half to two inches above the asphalt. It was reasonably foreseeable that someone would trip over a valve that was protruding above the roadway.

Even if the valve protruded due to the erosion of the asphalt around it, Island Water is not absolved of its responsibility to keep the public safe from a known tripping hazard. For instance, in City of Tampa v. Jorda, 445 So. 2d 699, 700 (Fla. 2d DCA 1984), this court determined that the trial court properly submitted to the jury the issue of the negligence of both the city and the landowner plaintiff. There, the plaintiff fell when she stepped on the city's water meter box in her front yard. The meter box had become tilted because some of the sand under the meter box had fallen away. The meter box gave way when the plaintiff stepped on it, thus causing her to fall. Id. Similarly, Island Water's valve became a hazard when it protruded above the pavement when the asphalt around it eroded or settled. See Utter v. Jacksonville Utils. Mgmt., Inc., 363 So. 2d 829, 829 (Fla. 1st DCA 1978) (reversing dismissal of amended complaint when it alleged a water utility's "negligent maintenance of its water meter and the creation or failure to repair a hazardous hole surrounding it"); City of Niceville v. Hardy, 160 So. 2d 535, 537 (Fla. 1st DCA 1964) (stating in a negligence case that the plaintiff's theory of recovery for a dangerous and defective condition was sound when the plaintiff's foot slid into a water meter box owned by the city and the meter box, due to soil erosion, had become tilted so that the lid would not stay on the box).

Here, based on the trial court's reliance on Lee County's agreement with Island Water, the trial court found that Island Water had a duty to the public only as to its equipment. Of course, the fact that the valve was protruding made that equipment a hazard. Further, an agreement between two parties does not necessarily absolve a party from a duty to the public.

- 6 -

The trial court found that Island Water had no duty regarding the asphalt around the valve because Island Water had not installed that asphalt and had not damaged the asphalt during maintenance checks. But despite a contract, a party who exercises control over property may have a duty to maintain a premises in a reasonably safe condition. See Burton v. MDC PGA Plaza Corp., 78 So. 3d 732, 736 (Fla. 4th DCA 2012) (reversing summary judgment and stating that "a commercial tenant may have a duty, independent of the landlord's duty, to maintain premises in a reasonably safe condition regardless of whether the landlord has contractually assumed responsibility to maintain the premises") (citing Levy v. Home Depot, Inc., 518 So. 2d 941, 942 (Fla. 3d DCA 1987); Bovis v. 7-Eleven, Inc., 505 So. 2d 661, 664 (Fla. 5th DCA 1987)). The trial court erred as a matter of law in determining that Island Water had no legal duty to correct or warn of a protruding water valve that was a tripping hazard. Therefore, we reverse the final summary judgment and remand for further proceedings.

**Evidence of Subsequent Remedial Measures**

Lee County contends that the trial court erred in granting Island Water's motion in limine to exclude evidence of subsequent remedial repairs. Island Water claims that its equipment did not cause the damage to the asphalt surrounding the valve. But about three months after Cantalupo's trip and fall, Island Water repaired the asphalt around the valve. Island Water successfully argued to the trial court that evidence of the subsequent remedial measures was inadmissible under section 90.407, Florida Statutes (2015), because the purpose of the evidence was to show negligence or culpable conduct.

Section 90.407 provides as follows:

Evidence of measures taken after an injury or harm caused by an event, which measures if taken before the event would have made injury or harm less likely to occur, is not admissible to prove negligence, the existence of a product defect, or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control, or the feasibility of precautionary measures, if controverted, or impeachment.

Lee County argues that the exception in section 90.407 applies because the evidence would be offered to show Island Water's control over the asphalt around the valve.

"It is well settled that a public or private entity which owns, operates, or controls a property, including a roadway, owes a duty to maintain that property, and a corresponding duty to warn of and correct dangerous conditions thereon." Pollock v. Fla. Dept. of Highway Patrol, 882 So. 2d 928, 933 (Fla. 2004). In Cook v. Bay Area Renaissance Festival of Largo, Inc., 164 So. 3d 120, 122 (Fla. 2d DCA 2015), this court also recognized that a party who exercises control over a premises has a corresponding duty and reversed a summary judgment in favor of the defendant. There, the fact that an employee of the defendant removed the pipe that caused the injury after the accident was a factor in determining whether the defendant exercised control of the premises. Id. at 123. In considering all the evidence, this court determined that issues of material fact existed regarding whether the defendant exercised control of the area where the plaintiff was injured. Id.

Here, the parties seem to dispute on appeal whether the issue of Island Water's control of the roadway was controverted. Island Water acknowledged the ability to control the roadway under circumstances when its equipment caused damage or needed repairs. And the trial court found, "It is uncontroverted that [Island Water] has

- 8 -

the ability to access and affect the road around the valve if such is required in order to repair or maintain the valve." But the issue that Lee County raises is whether Island Water had the ability to control the roadway around the valve absent the need for repairs to Island Water's equipment.

This issue will need to be addressed on remand because we are reversing on the issue of legal duty. Thus, on remand, the evidence of subsequent remedial repairs would be admissible at trial to show control if Island Water denies that it had the ability to control the roadway to make repairs in circumstances when its equipment did not cause the damage or need repair.

In addition, Lee County argues that the subsequent remedial measures are admissible as impeachment. On remand, if a witness testifies that Island Water did not have control over the roadway to make the repairs to the asphalt, then evidence of subsequent remedial measures would be admissible for impeachment. See § 90.407.

**Conclusion**

We reverse the final summary judgment in favor of Island Water and the order of December 16, 2015, that sets forth findings on the motion for reconsideration regarding subsequent remedial measures. We also reverse the order in limine of December 1, 2015, as to the ruling on subsequent remedial measures and the legal duty of Island Water. We remand for further proceedings in the trial court.

Reversed and remanded.


KELLY and WALLACE, JJ., Concur.